IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **FERNANDO MORALES,** | § | |
| **individually and on behalf** | § | |
| **of his minor children, F.M.** | § | |
| **and D.M., and ZIRENIA** | § | |
| **CARDOZA,** | § | |
|     **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **EP-19-CV-217-PRM** |
| | § | |
| **ENRIQUE CARRILLO,** | § | |
| **AARON CARRILLO,** | § | |
| **RUBEN CARDENAS,** | § | |
| **GABRIEL LECHUGA,** | § | |
| **MIGUEL CARZOLI, JUAN** | § | |
| **FERREL, GREG ALLEN,** | § | |
| **THE CITY OF EL PASO,** | § | |
| **TEXAS, and THE EL PASO** | § | |
| **POLICE DEPARTMENT,** | § | |
|     **Defendants.** | § | |

## <u>MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND MODIFYING IN PART THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

On this day, the Court considered the following filings in the above-captioned cause:

- Defendant City of El Paso's [hereinafter "City"] "Rule 12 Motions to Dismiss and Brief in Support" (ECF No. 17), filed on November 4, 2019;

- Defendant Aaron Carrillo's [hereinafter "Defendant A. Carrillo"] "Rule 12(b)(6) Motion to Dismiss" (ECF No. 16), filed on November 4, 2019;

- Defendant Enrique Carrillo's [hereinafter "Defendant E. Carrillo] "Rule 12(b)(6) Motion to Dismiss" (ECF No. 15), filed on November 4, 2019, and his "Reply to Plaintiffs' Response to Rule 12(b)(6) Motion to Dismiss" (ECF No. 59), filed on April 15, 2020;

- Defendant Ruben Cardenas' [hereinafter "Defendant Cardenas"] "Rule 12(b)(6) Motion to Dismiss" (ECF No. 14), filed on November 4, 2019, and his "Reply to Plaintiffs' Response to Cardenas' Rule 12(b)(6) Motion to Dismiss" (ECF No. 58), filed on April 15, 2020;

- Defendant Gabriel Lechuga's [hereinafter "Defendant Lechuga"] "Rule 12(b)(6) Motion to Dismiss" (ECF No. 13), filed on November 1, 2019, and his "Reply to Plaintiffs' Response to Lechuga's Rule 12(b)(6) Motion to Dismiss" (ECF No. 57), filed on April 15, 2020;

- Defendant Miguel Carzoli's [hereinafter "Defendant Carzoli"] "Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Complaint and Demand for Jury Trial" (ECF No. 39), filed on December 20, 2019, and his "Reply in Support of Motion to Dismiss Plaintiffs' Amended Complaint" (ECF No. 54), filed on April 15, 2020;

- Defendant Juan Ferrel's [hereinafter "Defendant Ferrel"] "Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Complaint and Demand for Jury Trial" (ECF No. 40), filed on December 20, 2019, and his "Reply in Support of Motion to Dismiss Plaintiffs' Amended Complaint" (ECF No. 55), filed on April 15, 2020;

- Plaintiffs Fernando Morales, individually and on behalf of his minor children, F.M. and D.M., and Zirenia Cardoza's [hereinafter "Plaintiffs"] "Amended Complaint and Jury Demand" (ECF No. 11) [hereinafter "Amended Complaint"],

filed on October 21, 2019, their "Combined Response to all Defendants' Motions to Dismiss" (ECF No. 48) [hereinafter "Response"], filed on April 3, 2020, and their "Written Objections to the Report and Recommendations of the Magistrate Judge" (ECF No. 70) [hereinafter "Objections"], filed on July 20, 2020; and

- the Magistrate Judge's "Report and Recommendations" (ECF No. 69) [hereinafter "Report and Recommendation"], filed on July 6, 2020.

After due consideration, the Court will adopt in part and modify in part the Magistrate Judge's Report and Recommendation, as provided below. Specifically, the Court adopts the finding that Plaintiffs have stated a claim for excessive force as to Defendant A. Carrillo and Defendant E. Carrillo, for which the latter is not entitled to qualified immunity. Additionally, the Court modifies the Report and Recommendation and concludes that Plaintiffs: (1) have stated a claim as to Defendant Cardenas for the fabrication of evidence, and (2) have failed to state a claim as to Defendant Lechuga, Defendant Carzoli, Defendant Ferrel, and the City for the reasons herein.

Accordingly, the Court will deny the motions to dismiss filed by Defendant A. Carrillo, Defendant E. Carrillo, and Defendant Cardenas and will grant the motions to dismiss filed by Defendant Lechuga, Defendant Carzoli, Defendant Ferrel, and the City.

3

# I.   PROCEDURAL AND FACTUAL BACKGROUND[1]

This case arises from an altercation that occurred in a parking lot involving a private citizen, Plaintiff Fernando Morales [hereinafter "Plaintiff Morales"], and an off-duty police officer, Defendant E. Carrillo.  *See generally* Am. Compl.  ¶¶ 14–31.  Plaintiffs bring this action alleging, *inter alia*, that Defendant E. Carrillo used excessive force against Plaintiff Morales and then fabricated evidence with the assistance of other Defendants to conceal his use of force.  *Id.* ¶¶ 33–38. In addition, Plaintiffs allege that these actions occurred pursuant to a municipal policy, for which the City is liable.  *Id.* ¶¶ 39–43.

## A.   Parking Lot Altercation

On July 1, 2017, Plaintiff Morales was driving through a Walmart parking lot with his two minor children, Plaintiffs F.M. and D.M., and his wife, Plaintiff Zirenia Cardoza [hereinafter "Plaintiff Cardoza"], in the vehicle.  *Id.* ¶ 14.  Plaintiffs were driving along a private perimeter road that connects the Walmart parking lot to a public street and had

---

[1] All facts described in this section are taken as true from the allegations in Plaintiffs' Amended Complaint in order to properly address the issues before the Court.  *Arnold v. Williams*, 979 F.3d 262 n.1 (5th Cir. 2020).

the right of way over vehicles traveling on the internal roads that do not connect to the street. *Id.* Plaintiffs allege that Defendant E. Carrillo, an off-duty City police officer, was driving on an interior road in the parking lot with his son, Defendant A. Carrillo, in the vehicle.[2] *Id.*

Plaintiffs allege that Defendant E. Carrillo, despite not having the right of way, pulled in front of Plaintiffs, requiring Plaintiff Morales to stop suddenly to avoid a collision. *Id.* As Defendant E. Carrillo drove in front of Plaintiffs, Plaintiffs allege that Defendant E. Carrillo "flipped off" Plaintiffs. *Id.*

Thereafter, Plaintiff Morales and Defendant E. Carrillo parked on the perimeter road. *Id.* ¶ 15. Plaintiff Morales exited his vehicle and approached the other car, where the Carrillo Defendants remained seated. *Id.* After a brief conversation with Defendant E. Carrillo, Plaintiff Morales turned his back to the Carrillo Defendants and began walking back to his vehicle. *Id.* Plaintiffs allege that Defendant A. Carrillo then exited the vehicle, grabbed Plaintiff Morales from behind, placed his arm around Plaintiff Morales' neck, and began to choke him.

---

[2] Defendant E. Carrillo and Defendant A. Carrillo are collectively referred to hereinafter as the "Carrillo Defendants."

*Id.*[3]  Plaintiffs allege that less than ten seconds transpired between Plaintiff Morales' conversation with Defendant E. Carrillo and the attack by Defendant A. Carrillo.  *Id.* ¶ 16.

Plaintiffs further allege that Defendant E. Carrillo then exited the vehicle and approached Plaintiff Morales from the front.  *Id.*  The Carrillo Defendants then dragged Plaintiff Morales for several feet before taking him to the ground.  *Id.*  While on the ground, Defendant A. Carrillo continued to choke and restrain Plaintiff Morales from behind, while Defendant E. Carrillo began striking Plaintiff Morales in the face.  Specifically, Plaintiffs allege that Defendant E. Carrillo "began pounding on [Plaintiff] Morales' face with his clenched fist, leading not with his knuckles but with a striking surface composed of his entire wrist and curled little finger, so that the hand became a hammer."  *Id.*

By this point, a crowd had gathered in the parking lot, and a bystander intervened to end the altercation.  *Id.* ¶ 17.  After a couple of

---

[3]Plaintiffs allege that Defendant A. Carrillo placed Plaintiff Morales in a "Rear Naked Choke Hold," a martial art maneuver wherein the attacker wraps their arm around their opponent's neck to restrict the flow of blood and oxygen to the brain.  Am. Compl. ¶ 15.

minutes, Plaintiff Morales was able to "regain his faculties" and stand up. *Id.* ¶ 18. Plaintiffs allege that at this time, the Carrillo Defendants both appeared to be laughing. *Id.* Upon seeing this, Plaintiff Morales became angry and "tr[ied] to get to [Defendant A.] Carrillo," but Defendant E. Carrillo knocked Plaintiff Morales back to the ground. *Id.*

Thereafter, an off-duty City police officer, Pete Herrera,[4] called 911 to report "what seemed like a melee involving numerous persons," but then reported that police assistance was unnecessary because the altercation had ended. *Id.* Plaintiffs allege that the 911 operator stated that a patrol car had already been dispatched, and Officer Herrera responded, "It's Kiki from PIO," which Plaintiffs contend is a reference to Defendant E. Carrillo, who works in the El Paso Police Department's Public Information Office. *Id.*

Plaintiff Morales suffered a broken eye socket, multiple bruises and abrasions, and at least one laceration to his face and chin as a result of the altercation. *Id.* ¶ 17. Plaintiffs allege that neither of the Carrillo Defendants was injured as a result of the altercation. *Id.*

---

[4] Although Officer Herrera was initially listed as a defendant in this action, Am. Compl. ¶ 5, he has since been dismissed. Order Dismissing Def. Pete Herrera 1–2, June 23, 2020, ECF No. 67.

Plaintiffs further allege that Plaintiff Morales continues to suffer from chronic, painful headaches and a significant loss of vision in his right eye. *Id.* In addition, Plaintiffs allege that Plaintiff Morales' children—Plaintiffs F.M. and D.M., and their mother, Plaintiff Cardoza—experienced "major 'bystander trauma'" as a result of having watched the "one-sided beating of their family member." *Id.*

### B.   Plaintiff Morales' Arrest

Officer Julio Guereca [hereinafter "Officer Guereca"], of the City Police Department, was the first officer to arrive at the parking lot. *Id.* ¶ 19. Plaintiffs allege that Officer Guereca waved to the Carrillo Defendants upon entering the parking lot and advised them to stay where they were. He then began speaking with Plaintiff Morales as he took handwritten notes. *Id.*

As Plaintiff Morales and Officer Guereca were speaking, Plaintiffs allege that Defendant Cardenas, a Sergeant with the City Police Department, arrived at the parking lot in his patrol car. *Id.* ¶ 20. Defendant Cardenas stopped where the Carrillo Defendants were standing and began talking with them through the driver's side window of his patrol car. *Id.* Plaintiffs allege that it was apparent from this

interaction that Defendant Cardenas "personally knew" the Carrillo Defendants, and Plaintiffs further allege that the Carrillo Defendants, Defendant Cardenas, and other unnamed officers[5] were laughing. *Id.*

After speaking with the Carrillo Defendants, Defendant Cardenas approached Plaintiff Morales and announced that he was under arrest for causing a motor vehicle collision, even though no collision had occurred. *Id.* ¶ 21. Plaintiffs allege that Defendant Cardenas also instructed Officer Guereca to discard the paper containing his investigative notes because "he did not need any of the information since the decision had already been made to arrest [Plaintiff] Morales." *Id.*

Officer Guereca then "crumpl[ed] up the paper on which he had been writing" and stuck it in his pocket. *Id.* Plaintiffs allege that Officer Guereca then handcuffed Plaintiff Morales and placed him in the rear seat of a patrol car,[6] where Plaintiff Morales was directed to remain seated. *Id.*

---

[5] Plaintiffs do not identify these officers, nor do they specify when they arrived at the scene.

[6] Plaintiffs do not identify the officer that was driving the patrol car in which Plaintiff Morales was held.

Once Plaintiff Morales was in the patrol car, Plaintiffs allege that Defendant Cardenas spoke with a few bystanders before returning to talk with the Carrillo Defendants.  *Id.* ¶ 22.  Defendant Cardenas gave Defendant E. Carrillo "a big hug," and Defendant E. Carrillo patted Defendant Cardenas on the back.  *Id.*  Defendant Cardenas then shook hands with Defendant A. Carrillo, who then patted Defendant Cardenas on the shoulder.  *Id.*  Plaintiffs allege that during this interaction, Defendant Cardenas and the Carrillo Defendants "resume[d] laughing." *Id.*

Thereafter, Defendant Cardenas interviewed Plaintiff Cardoza. *Id.* ¶ 23.  Plaintiffs allege that Defendant Cardenas was attempting to get information that he could use against Plaintiff Morales and that Defendant Cardenas threatened to have Plaintiff Cardoza arrested on outstanding traffic warrants if she did not cooperate.  *Id.*  When Plaintiff Cardoza refused to cooperate, Defendant Cardenas allegedly instructed another officer to arrest Plaintiff Cardoza.  *Id.*  In addition, Plaintiffs allege that Defendant Cardenas did not allow Plaintiff Cardoza to change from her swimsuit into another set of clothes as

retaliation for Plaintiff Cardoza's refusal to cooperate against her husband, Plaintiff Morales. *Id.*

While Plaintiff Morales was in the patrol car, Emergency Medical Services [hereinafter "EMS"] personnel arrived at the parking lot and attempted to speak with Plaintiff Morales. *Id.* ¶ 24. Plaintiffs allege that Defendant Cardenas informed the EMS personnel that Plaintiff Morales "did not need their help, that he was under their care[,] . . . and that they could leave." *Id.* After the EMS personnel left, Fire Department personnel arrived. *Id.* Defendants Cardenas then informed them that "they could go[,] and that [Plaintiff] Morales was under the care of the Police Department." *Id.* Thereafter, Defendant Cardenas approached Plaintiff Morales and informed him that he was also being arrested for driving while intoxicated. *Id.* ¶ 26.

At some point, Defendant Lechuga arrived at the scene and was instructed to view video surveillance tapes of the parking lot. *Id.* ¶ 25.[7] Defendant Lechuga reviewed the footage with a Walmart manager, who stated he would prepare a copy of the footage to be picked up the

---

[7] The Amended Complaint does not identify who instructed Defendant Lechuga to review and retrieve the surveillance footage.

following day.  *Id.*  Plaintiffs allege that Defendant Lechuga failed to pick up the copy of the surveillance tapes, that defense counsel obtained a copy of the tapes, and that the tapes corroborate Plaintiffs' recitation of the facts.  *Id.*

### C.    Post-Arrest Events

Thereafter, Defendant Cardenas instructed Defendant Lechuga to transport Plaintiff Morales to the hospital for medical treatment, as his chin was "bleeding profusely."  *Id.*  While en route, Defendant Lechuga stated that he had detected "a strong odor of alcohol" on Plaintiff Morales' breath and asked if he had been drinking earlier in the day. *Id.*  Plaintiff Morales then admitted to having consumed three beers earlier in the afternoon.  *Id.*  Plaintiff Morales alleges that Defendant Lechuga did not advise him of his *Miranda* rights at any point.  *Id.*

After arriving at the hospital, Plaintiff Morales received medical treatment.  *Id.* ¶ 27.  Medical staff cleaned the blood off Plaintiff Morales' face, stitched up his chin, and performed an MRI, which revealed that his right eye socket was broken.  *Id.*  Around this time, a nurse drew blood from Plaintiff Morales, "assuming the patient's permission for purposes of medical treatment."  *Id.*

Thereafter, Defendant Carzoli and Defendant Ferrel, officers with the City Police Department, arrived at the hospital and relieved Defendant Lechuga. *Id.* ¶ 28. Defendants Carzoli and Ferrel then retrieved the bag containing Plaintiff Morales' blood, despite not having requested or received his consent. *Id.* Subsequently, Plaintiff Morales was detained for three days on an assault charge. *Id.* ¶ 32. Plaintiffs allege that he was never taken before a magistrate judge for a probable cause determination. *Id.* ¶ 29.

In addition, Plaintiffs allege that Defendant Cardenas and the Carrillo Defendants "knowingly imposed false charges, supported by perjurious testimony, against [Plaintiff] Morales." *Id.* Specifically, Plaintiffs allege that the Carrillo Defendants deliberately lied and provided a false written statement to City Detective S. Cowie approximately four hours after Plaintiff Morales' arrest. *Id.* ¶¶ 31–33. Plaintiffs allege that the Carrillo Defendants falsely accused Plaintiff Morales of being responsible for the near-collision in the parking lot, *id.*, and of having struck Defendant E. Carrillo "on the left side of his face," *id.* ¶ 33. Plaintiffs allege that the surveillance footage shows that these statements cannot be true. *Id.* ¶ 31. They allege that the Carrillo

13

Defendants deliberately lied to police detectives "in order to conceal and justify" their use of excessive force in the parking lot, *id.* ¶ 36, and that as a result of the false statements, Plaintiff Morales was brought to trial on the assault charge, *id.* ¶ 35.

On June 27, 2018, a jury acquitted Plaintiff Morales of the criminal assault charge.  *Id.*  Shortly thereafter, Plaintiff Morales was indicted for felony DWI, even though Plaintiffs allege that his blood alcohol concentration level at the time of arrest was below the legal limit under Texas law.  *Id.*  Finally, Plaintiffs allege that Plaintiff Morales is being prosecuted "in apparent retaliation for his defense of himself in the assault trial."  *Id.*

### D.   Procedural History

On July 1, 2019, Plaintiffs filed their "Original Petition" in County Court at Law Number Six in El Paso County, Texas.  Notice of Removal, ECF No. 1, Aug. 9, 2019.  Thereafter, Defendants removed the action to the United States District Court for the Western District of Texas.  *Id.* On October 21, 2019, Plaintiffs filed their Amended Complaint, in which they assert five claims.  *See* Am. Compl. ¶¶ 33–43.

As relevant here,[8] Plaintiffs assert the following claims:

- Count One:  "Excessive Force During Arrest," in violation of the Fourth Amendment, based on the Carrillo Defendants' involvement in the parking lot altercation, *id.* ¶¶ 33–34;

- Count Two:  "Imposition of False Charges, Plus Perjured Testimony," in violation of the Fourteenth Amendment, based on the alleged conspiracy involving the Defendant Officers[9] to have Plaintiff Morales "seized and arrested, incarcerated for three days, and brought to trial on perjured testimony," *id.* ¶¶ 35–36; and

- Count Five:  "Municipal Liability," pursuant to 18 U.S.C. § 1983, based on the City's alleged policy of tolerating police misconduct and "police officers' CODE OF SILENCE [sic]," *id.* ¶¶39–44.

On April 29, 2020, the Court referred Defendants' 12(b)(6) motions

for consideration by the Magistrate Judge.  Order Referring Mots. U.S.

Magistrate Judge, April 29, 2020, ECF No. 62.  Subsequently, on July 6,

2020, the Magistrate Judge issued its Report and Recommendation.  R.

& R. 1.  As relevant here, the Magistrate Judge recommended that (1)

---

[8] In addition, Plaintiffs assert two claims under Texas state law—assault and a bystander claim.  Am. Compl. ¶¶ 37–38.  None of the motions to dismiss before the Court request dismissal of the state law claims.  As these issues have not been briefed, the Court's Order is limited to the violations of federal law asserted in Count One, Two, and Five of the Amended Complaint.

[9] Defendant E. Carrillo, Defendant Cardenas, Defendant Lechuga, Defendant Carzoli and Defendant Ferrel are hereinafter collectively referred to as the "Defendant Officers."

the Court dismiss the claim for municipal liability brought against the City, (2) dismiss the claim for the fabrication of evidence under a theory of civil conspiracy asserted against Defendant Lechuga, Defendant Carzoli, and Defendant Ferrel, and (3) grant Defendant E. Carrillo qualified immunity for the fabrication of evidence claim.  R. & R. 3.[10]

On July 20, 2020, Plaintiffs filed their Objections.[11]  Therein, Plaintiffs argue that:

- the Magistrate Judge improperly found that Defendant E. Carrillo is entitled to qualified immunity on the false-arrest conspiracy claim, Objs. 4;

- the Magistrate Judge improperly recommended that the claims against Defendants Lechuga, Carzoli, and Ferrel be dismissed for failure to apply the proper standard of review, Objs. 2–3; and

- the Magistrate Judge improperly held, *sua sponte*, that Plaintiffs failed to state a claim arising from *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975), Objs. 5;

---

[10] Additionally, the Magistrate Judge found that Plaintiffs had stated a cognizable claim for excessive force against Defendant Cardenas and the Carrillo Defendants.  *See* R. & R. 15–32.  Aside from the recommendation that the Court grant Defendant E. Carrillo qualified immunity on the fabrication of evidence claim, Objs. 3, no party has objected to the Magistrate Judge's recommendations with respect to Defendant Cardenas and the Carrillo Defendants.

[11] No Defendant has filed an objection to the Magistrate Judge's Report and Recommendation.

- the Magistrate Judge applied the incorrect standard for assessing claims against municipal entities and thus improperly recommended that the Court dismiss the claim against the City, Objs. 7.

## II.   LEGAL STANDARDS

### A.   Review of the Report and Recommendation

A district court, on its own motion, may refer a pending matter to a magistrate judge for proposed findings of fact and recommendations for the disposition, which the district court may accept, reject, or modify, in whole or in part.  28 U.S.C. § 636(b)(1).  Any party may challenge a magistrate judge's report and recommendation by filing written objections within fourteen days after being served with a copy of the magistrate judge's report.  *Id.*

Objections to a magistrate judge's report and recommendation must specifically identify the findings that the party wishes to have the district court consider.  *Thomas v. Arn*, 474 U.S. 140, 151 (1985).  A district court need not consider "[f]rivolous, conclusive, or general objections."  *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).

A district court must conduct a *de novo* review of any of the findings to which a party has specifically objected. § 636(b)(1)(C). Findings to which no specific objections are made do not require *de novo* review; a district court need only determine whether the unobjected findings are clearly erroneous or contrary to law. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428 (5th Cir. 1996) (en banc), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1).[12]

## B.    Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure authorize dismissal of an action that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Upon a motion brought pursuant to Rule 12(b)(6), a district court must determine whether the plaintiff's pleadings provide "a short and plain statement of the claim that that the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (reasoning that a 12(b)(6) motion challenges the sufficiency of a plaintiff's pleadings).

---

[12] "28 U.S.C. § 636(b)(1) expanded the period during which a party could object to the magistrate judge's recommendation from 10 days after service to 14 days. It otherwise left the holding of *Douglass* intact." *Mason v. Fremont Inv. & Loan*, 671 F. App'x 880, 882 n.4 (5th Cir. 2016).

Dismissal pursuant to 12(b)(6) may be warranted "on the basis of a dispositive issue of law." *Covington v. City of Madisonville*, 812 F. App'x 219, 223 (5th Cir. 2020) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)).  Additionally, dismissal pursuant to 12(b)(6) is warranted if the plaintiff fails to allege "enough facts to state a claim that is plausible on its face." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570).

A claim is facially plausible when the complaint includes sufficient factual allegations for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In contrast, a claim lacks facial plausibility when the plaintiff offers "a formulaic recitation of the elements of a cause of action," *Iqbal*, 556 U.S. at 678, or facts that are "merely consistent with" a defendant's liability, *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

In this posture, a district court must accept a plaintiff's allegations as true and indulge all reasonable inferences in their favor. *Gonzalez,* 577 F.3d at 603.  However, the court may not "accept as true

conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arnold*, 979 F.3d at 262 (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010); *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  "'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Covington*, 812 F. App'x at 223 (quoting *Iqbal*, 556 U.S. at 678).

## C.    Section 1983

Rev. Stat. § 1979, 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*  Thus, § 1983 provides a cause of action against individuals that violate federal rights while acting under the color of law.

To state a cognizable claim pursuant to § 1983, a plaintiff must allege (1) "that some person deprived him of a federal right" and (2) "that the individual who has deprived him of that right acted under

color of state or territorial law." *Arnold*, 979 F.3d at 262 (quoting

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

Claims brought pursuant to § 1983 are subject to the pleading

standard articulated in *Twombly/Iqbal*, discussed above.  *See, e.g.*, *id.*

("Section 1983 claims implicating qualified immunity are subject to the

same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* . . . .");

*Peña v. City of Rio Grande City*, 879 F.3d 613, 618 (5th Cir. 2018)

(same); *Anderson v. Valdez*, 845 F.3d 580, 599 (5th Cir. 2016) (same).

However, the doctrine of qualified immunity "adds a wrinkle to

pleading requirements for claims brought pursuant to § 1983." *Arnold,*

979 F.3d at 262.  A plaintiff seeking to overcome the defense of qualified

immunity "must plead specific facts that both allow the court to draw

the reasonable inference that the defendant is liable for the harm he

has alleged and that defeat a qualified immunity defense with equal

specificity." *Id.* (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir.

2012)).

## D.   Qualified Immunity

Qualified immunity is a common-law doctrine that "protects

government officials from civil damages liability when their actions

could reasonably have been believed to be legal." *Anderson*, 845 F.3d at 599 (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)). Properly applied, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 600 (quoting *Morgan*, 659 F.3d at 370; *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Thus, a court should not deny a qualified immunity defense unless the plaintiff can show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.*

### E.    Municipal Liability

A municipality may be liable pursuant to § 1983. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 669 (1978). Under settled doctrine, a plaintiff asserting municipal liability must plead facts suggesting the existence of (1) an official policy, (2) that was promulgated by an authorized policymaker, (3) and that was the "moving force" behind the constitutional deprivation. *Peña*, 879 F.3d at 621 (5th Cir. 2018) (quoting *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017)).

However, § 1983 does not allow a plaintiff to hold a municipality liable under a theory of *respondeat superior*; a municipality is immunized from § 1983 liability unless the plaintiff can demonstrate that an "official municipal policy of some nature caused" the alleged violation of plaintiff's rights. *Monell*, 436 U.S. at 691. Thus, the "official-policy" requirement ensures that a municipality is not improperly held responsible for the misconduct of an employee. *Id.*

## III.  ANALYSIS

The Court first considers the portions of the Report and Recommendation to which no party has objected.[13] Specifically, the Court considers the Magistrate Judge's findings that: (1) Plaintiffs have stated a claim for excessive force as to Defendant E. Carrillo, for

---

[13] The Magistrate Judge found that Plaintiffs have stated a cognizable claim for false arrest as to Defendant Cardenas, for which he is not entitled to qualified immunity. R. & R. 32. Although no party objected to this finding, the Court is of the opinion that the Magistrate Judge improperly analyzed Plaintiffs' claim against Defendant Cardenas— Count Two of the Amended Complaint—under the rubric of a Fourth Amendment violation. The Amended Complaint expressly alleges a violation of the Fourteenth Amendment without any reference to the Fourth Amendment. Am. Compl. ¶¶ 35–36. Accordingly, the Court rejects any findings or recommendations to the extent they characterize Count Two of the Amended Complaint as a claim for false arrest in violation of the Fourth Amendment.

which he is not entitled to qualified immunity, R. & R. 21, and (2) Plaintiffs have stated a claim for excessive force as to Defendant A. Carrillo, R. & R. 28.  After careful consideration, the Court determines that these findings are neither clearly erroneous nor contrary to law. Thus, the Court adopts these findings for the reasons set forth in the Report and Recommendation.

The Court next considers the findings and recommendations to which Plaintiffs have objected.  Specifically, Plaintiffs object that the Magistrate Judge improperly dismissed the civil conspiracy claims brought against Defendant Cardenas, Defendant Lechuga, Defendant Carzoli, and Defendant Ferrel.  Objs. 2–4.  In addition, Plaintiffs object that the Magistrate Judge improperly found that Plaintiffs had not stated a *Gerstein* claim based upon the failure to provide Plaintiff Morales with a probable cause determination.  *Id.* at 5–6.  Finally, Plaintiffs object that the Magistrate Judge improperly dismissed their *Monell* claim against the City.  *Id.* at 6–8. The Court addresses these issues *seriatim*.

## A.    Defendant Officers

The Defendant Officers—Defendants E. Carrillo, Cardenas, Lechuga, Carzoli, and Ferrel—contend that they are entitled to qualified immunity.

Qualified immunity is a common-law doctrine that "protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Anderson*, 845 F.3d at 599 (quoting *Morgan*, 659 F.3d at 370). A court should not deny a state official's claim of qualified immunity unless the plaintiff can show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* "Clearly established" means that at the time of the officer's conduct, extant precedent had "placed the statutory or constitutional question beyond debate," such that every reasonable officer would have understood his actions were unlawful. *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Under this demanding standard, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 600 (quoting *Malley*, 475 U.S. at 341).

### 1.   Defendant E. Carrillo

#### i.   *Excessive Force (Count One)*

As discussed above, no party has objected to the Magistrate Judge's determination that Plaintiffs have stated a cognizable excessive force claim as to Defendant E. Carrillo, for which he is not entitled to qualified immunity.  Having found that this determination is neither clearly erroneous nor contrary to law, the Court adopts this determination for the reasons articulated by the Magistrate Judge.  *See* R. & R. 15–21.

#### ii.   *Imposition of False Charges (Count Two)*

Plaintiffs object that the Magistrate Judge improperly granted Defendant E. Carrillo qualified immunity on the false-arrest claim. Objs. 4.  The Magistrate Judge determined that Defendant E. Carrillo is entitled to qualified immunity on this claim because Plaintiffs failed to "identify what federal right . . . was violated by the allegedly false statements [Defendant] E. Carrillo made to police detectives."  R. & R. 24.  For the reasons to follow, the Court will reject this determination and will find that Plaintiffs state a cognizable claim based upon the

imposition of false charges, for which Defendant E. Carrillo is not entitled to qualified immunity.

The Fourteenth Amendment protects the "due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015) ("*Cole I*"), *judgment vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016) *and opinion reinstated in part*, 935 F.3d 444 (5th Cir. 2019) (en banc) ("*Cole II*"). In *Cole I,* the Fifth Circuit stated that a violation of substantive due process lies where state action "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* (quoting *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012)). Consequently, the court held that allegations that police officers fabricated evidence give rise to a Fourteenth Amendment violation, reasoning that "if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals." *Id.* (quoting *Limone v. Condon*, 372 F.3d 39, 45 (1st Cir. 2004)).

Here, Plaintiffs allege that Defendant E. Carrillo "deliberately lied in order to . . . cover up his own unlawful use of force," in violation of the Fourteenth Amendment.  Am. Compl. ¶ 35.  Specifically, Plaintiffs allege that Defendant E. Carrillo "gave [a] written statement[] to police detectives about four hours after the incident," *id.* ¶ 31, in which he claimed that Plaintiff Morales struck him "on the left side of the face," *id.* ¶ 31.  Plaintiffs allege that this false statement was used to bring Plaintiff Morales to trial on an assault charge.  *Id.* ¶ 35.  Plaintiffs further allege that Defendant E. Carrillo orchestrated an effort to "conceal and justify" his actions in the parking lot by enlisting the other Defendant Officers in a conspiracy against Plaintiff Morales.  *Id.* Plaintiffs contend that this conduct violated the clearly established due process right protected by the Fourteenth Amendment.  *Id.*

Considered in their totality, the Court determines that Plaintiffs' allegations meet the standards for a false-arrest claim under the Fourteenth Amendment.  As in *Cole I*, Plaintiffs expressly allege that Defendant E. Carrillo fabricated evidence, to wit, the false written statement he gave accusing Plaintiff Morales of assaulting a police officer.  *Compare id.* at 764 *with* Am. Compl. ¶ 35.  Moreover, Plaintiffs'

claim is supported by specific factual allegations.  Plaintiffs allege that four hours after Plaintiff Morales' arrest, Defendant E. Carrillo, along with Defendant A. Carrillo, deliberately provided false statements to Detective S. Cowie, wherein they accused Plaintiff Morales of striking Defendant E. Carrillo "on the left side of his face."  Am. Compl. ¶¶ 31, 33.

Plaintiffs need only state enough facts to establish a claim that is plausible on its face at this stage of the proceedings.  Required to credit Plaintiffs' account, the Court finds it reasonable to infer that Defendant E. Carrillo violated clearly established law by deliberately providing false statements to police detectives to have Plaintiff Morales charged with a crime and to conceal his use of force.  As the Court finds that Defendant E. Carrillo is directly liable for the false-arrest claim, the Court need not consider the extent to which this conduct may also give rise to liability under a theory of civil conspiracy.

### 2.   Defendant Cardenas

Plaintiffs allege that Defendant Cardenas, as a member of the alleged conspiracy, is liable for violating the Fourteenth Amendment. Am. Compl. ¶ 35.

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). "[T]o prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990).

Before the Court may consider whether Defendant Cardenas is liable under a theory of civil conspiracy, the Court must first identify a violation of clearly established federal law, for which the offending actor is not entitled to qualified immunity. *See id.* (On a motion to dismiss, courts "must look first to determine the objective reasonableness of the state action which is alleged to have caused harm to the plaintiff. *Only if* that state action is determined not to be objectively reasonable should we look at whether the officer's actions were taken pursuant to a conspiracy.") (emphasis added); *accord Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019).

As discussed above, the Court has found that Plaintiffs have stated a cognizable claim for false arrest against Defendant E. Carrillo for fabricating evidence to conceal his use of excessive force. *See supra*, Part III.A.1. The Court now considers whether the Amended Complaint plausibly suggests the existence of a civil conspiracy through which Defendant Cardenas may be liable for fabricating evidence.

To suggest the existence of a civil conspiracy, Plaintiffs must allege "operative facts" suggesting that Defendant Cardenas and Defendant E. Carrillo agreed to violate Plaintiffs' rights. *Jackson v. City of Hearne*, 959 F.3d 194, 206 n.16 (5th Cir. 2020) (quoting *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987)). "Bald allegations that a conspiracy existed are insufficient." *Lynch*, 810 F.2d at 1369–70; *see also Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) ("Mere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss."). Yet Plaintiffs may "rely on circumstantial evidence and reasonable inferences therefrom since conspiracies 'are rarely evidenced by explicit agreements.'" *Way v. Mueller Brass Co.*, 840 F.2d 303, 308 (5th Cir. 1988) (quoting *Mack v. Newton*, 737 F.2d 1343, 1350–51 (5th Cir.1984)).

31

Plaintiffs allege that Defendant E. Carrillo "enlist[ed] successfully all of the other named individual Defendants" in an unlawful conspiracy. Am. Compl. ¶ 35. In support of this conclusion, Plaintiffs allege specific facts: (1) that Defendant Cardenas, upon arriving at the parking lot, stopped first to speak and laugh with the Carrillo Defendants, *id.* ¶ 20, (2) that, after speaking with the Carrillo Defendants, Defendant Cardenas announced his decision to arrest Plaintiff Morales for causing a motor vehicle collision even though no collision had occurred, *id.* ¶ 21, (3) that Defendant Cardenas then "called out" and instructed Officer Guereca to discard the paper containing his investigative notes because Defendant Cardenas "did not need any of the information since the decision had already been made to arrest [Plaintiff] Morales," *id.*, and (4) that Defendant Cardenas, after speaking to a few bystanders, returned to speak and laugh with the Carrillo Defendants, *id.* ¶ 22.

Additionally, Plaintiffs allege that Defendant Cardenas, after ordering Plaintiff Morales' arrest, questioned Plaintiff Cardoza to get information that could be used against Plaintiff Morales. *Id.* ¶ 23. When Plaintiff Cardoza refused to cooperate, Defendant Cardenas

retaliated by instructing another officer to arrest her for outstanding

traffic warrants and by prohibiting her from changing into street

clothes.  *Id.*  Plaintiffs further allege that when Emergency Medical

Services officers arrived at that scene, Defendant Cardenas prevented

them from speaking with, or treating Plaintiff Morales, despite his

visible injuries.  *Id.*

Together, these allegations suggest that Defendant Cardenas

conspired with Defendant E. Carrillo to violate Plaintiffs' rights.

Plaintiffs specifically allege that an agreement was formed when

Defendant Cardenas arrived at the scene.  The allegation that

Defendant Cardenas was speaking and laughing with the Carrillo

Defendants plausibly suggests an opportunity to enter into an

agreement.

Moreover, Defendant Cardenas' conduct at the scene provides

circumstantial support for the existence of a conspiracy.  Immediately

after speaking with the Carrillo Defendants, Defendant Cardenas

announced that Plaintiff Morales was under arrest for causing a

collision.  Notably, Defendant Cardenas made this decision even though

Plaintiffs allege that no collision had occurred, a contention that the

Court is required to accept as true.  Relatedly, Defendant Cardenas instructed Officer Guereca to throw away his investigative notes, stating "he did not need any of the information."  *Id.* ¶ 21.  This conduct permits an inference that Defendant Cardenas' participed in an unlawful conspiracy and is bolstered by Plaintiffs' allegation that Defendant Cardenas prevented EMS and Fire Department personnel from treating Plaintiff Morales, who was visibly injured.

The Court is of the opinion that Plaintiffs allege specific facts regarding when and where the agreement took place.  Further, the Court finds that Defendant Cardenas' subsequent conduct, as alleged by Plaintiffs, suggests his willing participation in a civil conspiracy. Accordingly, the Court concludes that Plaintiffs have stated a cognizable claim of civil conspiracy as to Defendant Cardenas.

### 3.   Defendant Lechuga

Plaintiffs next object that the Magistrate Judge improperly dismissed the claims against Defendant Lechuga by failing to consider the plausibility of the claims "in light of the Complaint in its entirety." Objs. 2.  The Court reviews *de novo* the issues that have been timely objected to, although it need not consider a party's "conclusive, or

general objections." *Battle*, 834 F.2d at 421 (internal quotation omitted).

As stated above, Plaintiffs must allege specific facts that suggest the existence of a civil conspiracy. Here, Plaintiffs do not allege that Defendant Lechuga agreed to conspire against Plaintiffs, nor do they allege specific facts that suggest an agreement.[14] Moreover, Plaintiffs' allegation that Defendant Lechuga failed to retrieve exculpatory surveillance footage, Am. Compl. ¶ 25, is at most "merely consistent" with their theory and does not plausibly suggest that Defendant Lechuga was a co-conspirator. *Iqbal*, 556 U.S. at 678; *see Jabary v. City of Allen,* 547 F. App'x 600, 610 (5th Cir. 2013) ("Without more, parallel conduct" does not suggest the existence of a "preceding agreement" because the "parallel conduct . . . could just as well [have] been independent action.") (quoting *Twombly*, 550 U.S. at 557).

---

[14] Plaintiffs allege that Defendant E. Carrillo, "through his influence over his fellow officers," "did enlist successfully all the other named individuals Defendants to conspire . . . ." Am. Compl. ¶ 35. However, Plaintiffs do not refer to facts suggesting that Defendant Lechuga, in specific, had the opportunity to agree to a conspiracy. Accordingly, the Court is of the opinion that Plaintiffs state a "legal conclusion couched as a factual allegation" that the Court is not required to accept as true. *Iqbal,* 556 U.S. at 678.

Plaintiffs' sparse and conclusory assertion that Defendant Lechuga conspired to violate Plaintiff Morales' rights does not suggest a plausible entitlement to relief.  Accordingly, the Court concludes that Plaintiffs have not asserted a cognizable conspiracy claim against Defendant Lechuga.

### 4.    Defendant Carzoli and Defendant Ferrel[15]

Plaintiffs next object that the Magistrate Judge improperly dismissed the claims against Defendant Carzoli and Defendant Ferrel. Objs. 2.

Once again, Plaintiffs' allegations do not suggest that Defendant Ferrel and Defendant Carzoli were involved in the conspiracy.  First, Plaintiffs do not expressly allege that Defendant Ferrel and Defendant Carzoli agreed to conspire with Defendant E. Carrillo; instead, they

---

[15] All actions attributed to Carzoli are also attributed to Ferrel. Further, Carzoli's motion to dismiss and Ferrel's motion to dismiss are functionally identical, alleging the same facts and making the same legal arguments. *Compare* Rule 12(b)(6) Mot. to Dismiss (ECF No. 13) *with* Rule 12(b)(6) Mot. to Dismiss Pls.' Am. Compl. and Demand for Jury Trial (ECF No. 39).  Therefore, the Court will address Defendant Carzoli and Defendant Ferrel's liability collectively.  *See Goode v. Baggett,* 811 F. App'x 227, 237 (5th Cir. 2020) (stating that a court is not required to "conduct a separate analysis for each officer [if] their actions are materially indistinguishable") (quoting *Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007)) (alteration in original).

make a generalized allegation that Defendant E. Carrillo successfully enlisted the Defendant Officers in the alleged conspiracy. Am. Compl. ¶ 35. Without more specific details, the Court is not required to accept this conclusory allegation as true. *Iqbal,* 556 U.S. at 678.

Plaintiffs aver that Defendant Carzoli and Defendant Ferrel's conduct at the hospital, when considered in light of the other factual allegations, reasonably suggests their involvement in the conspiracy. Objs. 3. Specifically, Plaintiffs emphasize that Defendant Carzoli and Defendant Ferrel obtained Plaintiff Morales' blood sample without his consent in order "to protect a fellow officer at the expense of an innocent civilian." *Id.* The Court is not persuaded. Without more, these allegations do not suggest a plausible claim for relief.

Although Plaintiffs characterize the retrieval of the blood sample as an attempt to cover for Defendant E. Carrillo, the Court is not required to draw unreasonable inferences in Plaintiffs' favor. Here, an "obvious alternative explanation" exists, *Twombly*, 550 U.S. at 567— that Defendant Ferrel and Defendant Carzoli were instructed to collect a blood sample from Plaintiff Morales because Plaintiff Morales had previously confessed that he consumed multiple alcoholic beverages

37

before the altercation began, Am. Compl. ¶ 26.  Given Plaintiff Morales'
undisputed confession, a natural explanation for Defendant Ferrel and
Defendant Carzoli's conduct is that they were duty-bound to retrieve a
blood sample, as police officers are often required to do when
investigating whether someone was driving while under the influence.
*See, e.g.*, *Missouri v. McNeely*, 569 U.S. 141, 152 (2013) (recognizing a
state's interest in obtaining a blood sample from an individual
suspected of drunk driving).

Nothing in the Amended Complaint suggests Defendants Ferrel
and Carzoli had the opportunity to enter into a conspiracy.  Relatedly,
Plaintiffs' allegations that are specific to Defendant Carzoli and Ferrel
do not "nudge[] their claim[] across the line from conceivable to
plausible" because their action is "merely parallel conduct that could
just as well [have been] independent action."  *Twombly*, 550 U.S. at 570,
557.

Accordingly, the Court concludes that Plaintiffs have not asserted
a cognizable claim against Defendant Carzoli and Defendant Ferrel.

## B.   *Gerstein*[16] **Claim**

Plaintiffs next object to the "Magistrate Judge ruling, sua sponte, that Plaintiffs have failed to state a claim in violation of a constitutional right for the failure to take [Plaintiff] Morales before a magistrate within 48 hours of his arrest."  Objs. 5.  Plaintiffs concede that this determination is "technically correct" as the Complaint states a violation of Texas law, but does not allege a violation of federal law.  *Id.* Plaintiffs aver that they will seek the Court's leave to amend their Complaint to re-frame this claim as a violation of federal law.  *Id.*

As Plaintiffs admit, the Magistrate Judge correctly recognized that § 1983 provides a cause of action for violations of federal laws, but not state laws.  *See* R. & R. 41 ("Section 1983 provides a federal remedy for . . . violations of federal statutory as well as constitutional rights.") (quoting *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105 (1989)).  Here, the Amended Complaint expressly alleges a violation of the Texas Code of Criminal Procedure, Am. Compl. ¶ 29, a state

---

[16] *Gerstein v. Pugh*, 420 U.S. 103 (1975).  In *Gerstein*, the Supreme Court announced that a Fourth Amendment violation may lie when an individual subjected to a warrantless arrest is not provided a judicial determination of probable cause "promptly after arrest."  *Id.* at 124.

statute that cannot give rise to a § 1983 claim.  *Golden State Transit Corp,* 493 U.S. at 106 ("[T]he plaintiff must assert the violation of a *federal* right.) (emphasis added).

However, dismissal is not warranted at this stage in the litigation just because Plaintiffs fail to articulate the precise legal theory.  As the Supreme Court and Fifth Circuit have recognized, "when a complaint contains sufficient '*factual* allegations,' a court should not grant a motion to dismiss for [an] 'imperfect statement of the legal theory supporting the claim asserted.'"  *Groden v. City of Dall.*, 826 F.3d 280, 284 (5th Cir. 2016) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014)) (alteration added). Instead, the proper criterion is whether the Complaint has enough factual content to be facially plausible.  *Iqbal*, 556 U.S. at 679.  Thus, the Court considers this issue *de novo* to determine whether Plaintiffs' factual allegations suggest a plausible claim for relief.

Under the Fourth Amendment, an individual may be arrested, even though a warrant did not issue, provided there is probable cause to "believe that the individual has committed a crime."  *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017) (internal quotation omitted).  However,

as recognized in *Gerstein*, the Fourth Amendment requires that in such circumstances, the state provide a judicial determination of probable cause "promptly after arrest." 420 U.S. at 125. As a general matter, a probable cause determination made within forty-eight hours of the arrest will suffice. *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012); *accord* Tex. Code Crim. Proc. Ann. art. 14.06 (West 2021) (requiring that an arresting officer provided an arrested individual with a probable cause determination within forty-eight hours of arrest).

When a probable cause determination is not provided within forty-eight hours, the state must demonstrate "a bona fide emergency or other extraordinary circumstances—which cannot include intervening weekends—to show that the delay was justified" to comply with the Fourth Amendment. *Jones,* 678 F.3d at 348. Ultimately, reasonableness is the touchstone for assessing whether the Fourth Amendment has been violated. *Id.*

Here, Plaintiffs allege that Defendant Carzoli and Defendant Ferrel did not take Plaintiff Morales before a magistrate judge for a probable cause determination, Am. Compl. ¶ 29, and that Plaintiff Morales was detained for three days following his arrest, *id.* ¶ 32.

41

In turn, Defendants allege that Plaintiff Morales was taken before a magistrate judge, who determined that probable cause existed. At this stage, the Court is required to credit Plaintiffs' recitation of the facts. Thus, the Court accepts as true Plaintiffs' allegation that a probable cause hearing was not provided. Nonetheless, the Court is of the opinion that Plaintiffs have failed to state a *Gerstein* violation.

Under Texas law, the arresting officer is responsible for taking a detained individual before a magistrate within forty-eight hours of the arrest. Tex. Code Crim. Proc. Ann. art. 14.06 (West 2021). Here, Plaintiffs allege that Defendant Carzoli and Defendant Ferrel failed to take Plaintiff Morales before a magistrate judge. Yet, Plaintiffs do not allege that Defendant Carzoli and Defendant Ferrel were the arresting officers. On the contrary, Plaintiffs state that Defendant Carzoli and Defendant Ferrel[17] retrieved the blood sample, which a nurse had drawn, and "walked out without saying anything to [Plaintiff] Morales." Am. Compl. ¶ 28. Without more, Plaintiffs have not alleged that Defendant Carzoli or Defendant Ferrel were the arresting officers.

---

[17] The Court notes that Plaintiffs do not know if Defendant Ferrel or Defendant Carzoli retrieved the blood sample. Am. Compl. ¶ 28.

Moreover, Plaintiffs' allegations do not reasonably suggest that some other officer was responsible for taking Plaintiff Morales before a magistrate judge.  For instance, Plaintiffs initially allege that Defendant Cardenas—not Defendant Carzoli and Defendant Ferrel—announced the arrest of Plaintiff Morales.  *Id.* ¶ 21.  Later, Plaintiffs allege that Officer Guereca restrained Plaintiff Morales and placed him in a patrol car.  *Id.*  In addition, Plaintiffs expressly allege that Defendant Cardenas and the Carrillo Defendants "imposed false charges."  *Id.* ¶ 31.  Even after crediting Plaintiffs' factual claims, the Court is not persuaded that these allegations plausibly suggest that either Defendant Carzoli or Defendant Ferrel—or any other Defendant Officer for that matter—was responsible for taking Plaintiff Morales before a magistrate judge.

For this reason, the Court concludes that Plaintiffs have failed to state a claim arising from the failure to provide Plaintiff Morales with a probable cause determination within forty-eight hours of his arrest.

## C.    *Monell*[18] Claim

---

[18] *Monell v. Department of Social Services,* 436 U.S. 658 (1978).

Plaintiffs object that the Magistrate Judge improperly dismissed their claim against the City by (1) applying the wrong standard of review and (2) erring in its application of the law.  Objs. 6–8.

In *Monell*, the Supreme Court held that a plaintiff may hold a municipality liable pursuant to § 1983 when official municipal policy results in a deprivation of federal rights.  436 U.S. at 694.  To state a claim under *Monell*, Plaintiffs must allege facts supporting the inference that "there was either an official policy or an official custom, adopted by the municipality, that was the moving force behind the claimed constitutional violation.  *Duvall v. Dallas Cnty.*, 631 F.3d 203, 209 (5th Cir. 2011); *see also Estate of Bonilla v. Orange Cnty.*, No. 19-41039, 2020 U.S. App. LEXIS 37935, at *17 (5th Cir. Dec. 3, 2020) ("[M]unicipal liability under section 1983 requires proof of three elements: a policy marker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)) (alteration in original).

    1.   <u>Pleading Standard</u>

As a threshold matter, Plaintiffs object that the Magistrate Judge applied the incorrect standard of review when assessing their claim against the City.  Objs. 6.  Seizing on the Court's decision in a different case, Plaintiffs contend that they may survive the City's Motion to Dismiss by offering "minimal allegations" that suggest "past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy."  Objs. 6 (quoting *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 532 (W.D. Tex. 2017).  The Court agrees that *Sanchez* accurately states the applicable pleading standard for claims against a municipality.  However, the Court disagrees that *Sanchez* is inconsistent with the legal standard articulated in the Report and Recommendation.

In *Sanchez*, the plaintiffs asserted a claim against the City, alleging the existence of a municipal policy whereby police officers routinely used excessive force against individuals with known mental health issues.  283 F. Supp. 3d at 529–30.  In considering whether the *Sanchez* plaintiffs' claim could survive a motion to dismiss, the Court

45

recognized a potential inconsistency between the municipal pleading standards announced in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) and the pleading standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *Id.*  After careful consideration of the relevant caselaw, the Court concluded that *Leatherman* is compatible with *Twombly/Iqbal.  Sanchez,* 283 F. Supp. 3d at 532.  The Court reasoned that all of these cases require more than "boilerplate allegations, on the one hand," but less than "specific details regarding the existence or absence of internal policies," on the other hand.  *Id.* (internal quotations omitted).  Hence, the Court stated that a reviewing court must "draw on its judicial experience and common sense" to determine whether a plausible claim for relief has been stated. *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Since *Sanchez*, the Fifth Circuit has addressed the uncertainty that previously gave the Court pause:  "[O]ur precedents make clear that the *Twombly* standard applies to municipal liability claims." *Ratliff v Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020) (internal citations omitted).  The Fifth Circuit clarified that even under

*Leatherman,* a plaintiff could not survive a motion to dismiss by relying on "generic or boilerplate pleadings." *Id.*

In the present action, Plaintiffs object that the Magistrate Judge improperly applied the standard as articulated in *Ratliff* in a way that is incompatible with *Sanchez.* Objs. 7.  The Court does not agree.

Contrary to Plaintiffs' suggestion, there is no tension between the standards applied in *Sanchez* and *Ratliff.*  Both opinions reflect the settled principle that plaintiffs must allege specific facts and may not rely on conclusory allegations to survive a motion to dismiss.  *Compare Sanchez*, 283 F. Supp. 3d at 531–32 *with Ratliff*, 948 F.3d at 284. In distinguishing the former from the latter, a reviewing court must draw on its "judicial experience and common sense" to consider whether a plaintiff's factual allegations state a claim to relief that is facially plausible.  *Iqbal*, 556 U.S. at 679; *accord Sanchez,* 283 F. Supp. 3d at 532.

Thus, *Ratliff* does not preclude the Court from considering whether Plaintiffs claims are plausible in light of the "multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, [and] the involvement of multiple officials in the misconduct."

47

*Sanchez,* 283 F. Supp. 3d at 532 (quoting *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011)).  However, contrary to Plaintiffs' reading, *Sanchez* does not suggest that these factors, absent "past incidents of misconduct to others," are independently sufficient to state a claim against the City.  *See id.*  Ultimately, the touchstone for assessing municipal liability is whether Plaintiffs' allegations, when accepted as true, "state a claim to relief that is plausible on its face." *Ratliff,* 948 F.3d at 285 (quoting *Iqbal*, 556 U.S. at 678).

Consequently, the Court concludes that the Magistrate Judge applied the correct standard of review when analyzing Plaintiffs' claim for municipal liability.

### 2.  Application

Relatedly, Plaintiffs object that the Magistrate Judge erred in its application of the law to their claims.  The Court reviews this issue *de novo*.

### i.  *Unofficial Custom as Policy*

To state a claim for municipal liability, Plaintiffs must allege facts suggesting (1) the existence of an official policy, (2) that was adopted by an authorized policymaker, and (3) that was the moving force behind

the constitutional violation.  *Duvall*, 631 F.3d at 209.  In the absence of an official policy, Plaintiffs may satisfy the first prong by demonstrating a persistent and widespread practice that is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) (quoting *Webster v. Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).  "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct."  *Id.*

Here, Plaintiffs allege that the City has an unofficial custom of tolerating police misconduct.  Am. Compl. ¶ 43. In support thereof, Plaintiffs cite the following facts:  (1) that, except for Defendant Lechuga, all Defendant Officers "rallied around" the Carrillo Defendants, *id.* ¶ 40, (2) that certain unnamed Defendants sought to evade service of process, *id.* ¶ 41, (3) that no officer—including Defendant E. Carrillo— was disciplined following Plaintiff Morales' arrest, *id.* ¶ 42, (4) that no officer has been disciplined for "involvement in off-duty assaults against civilians of the same gender" in the past ten

years, Resp. 9, and (5) that the City has not adopted a policy instructing police offers not to observe a code of silence, Resp. 9.  Furthermore, Plaintiffs emphasize that the altercation between Plaintiff Morales and Defendant E. Carrillo occurred in the open, resulted in serious harm to Plaintiff Morales, and involved multiple officers.  Objs. 6.

As a general matter, even after accepting Plaintiffs' allegations against the City as true, the Court is of the opinion that Plaintiffs' allegations related to the City are so conclusory that it is difficult to assess the City's culpability.  Plaintiffs do not identify any similar incidents of police misconduct that would suggest the City has a widespread practice of tolerating police misconduct.  Instead, Plaintiffs seek to carry their burden by emphasizing the events leading to and following Plaintiff Morales' arrest.  *See* Am. Compl. ¶¶ 40–41.  The Court is not persuaded that the circumstances surrounding Plaintiff Morales' arrest meet the standard for municipal liability.

In *Peña v. City of Rio Grande City,* the Fifth Circuit held that the plaintiffs had not sufficiently pleaded a *Monell* claim where the only specific allegations related to an isolated interaction involving the plaintiff.  879 F.3d 613, 622–23 (5th Cir. 2018).  The plaintiff based

their claim on an alleged municipal practice whereby police officers routinely used taser weapons on individuals that were not resisting arrest.  *Id.*  In dismissing this claim at the pleading stage, the *Peña* Court emphasized that where the only allegations relate to the "single incident in which [the plaintiff] was involved," the plaintiff could not establish a "persistent and widespread" practice.  *Id.* at 622 (internal quotation omitted).  Thus, *Pena* makes clear that to "plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to his injury."  *Id.*  (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Similarly, in *Ratliff*, the Fifth Circuit found that the district court's dismissal of a *Monell* claim was warranted because the plaintiff had failed to identify other incidents of similar misconduct that would suggest a practice that rises to the level of a municipal policy.  948 F.3d at 285.  The *Ratliff* Court reasoned that a claim against a municipality could not survive when "the complaint's only specific facts appear in the section laying out the events that gave rise to th[e] action," and thus rejected as conclusory the plaintiff's assertion that there was a

"persistent, widespread practice" of tolerating the use of excessive force. *Id.*

In contrast, the Court in *Sanchez* held that a *Monell* claim was cognizable because the plaintiffs described multiple incidents of similar misconduct that reasonably suggested the existence of a "widespread and persistent" practice.  283 F. Supp. 3d at 536.  There, the complaint described in detail "nine specific instances" where City police officers had used excessive force against individuals with known mental health issues.  *Id.*  In addition, the complaint cited statistics from 2012–2016 suggesting that almost 57% of people who died in custody had known mental illness, along with statistics from 2015–2016 suggesting that at least 66% of individuals who were shot and killed by City police officers had exhibited visible signs of mental illness.  *Id.*  Based on these allegations, the Court found that the plaintiff's complaint reasonably suggested that the relevant municipal policymaker "had actual or constructive knowledge" of the practice, sufficient for the claim to survive a motion to dismiss.  *Id.* at 538.

In stark contrast, Plaintiffs' Amended Complaint does not identify a single similar incident of misconduct that could reasonably suggest

the existence of the alleged policy.  To the extent Plaintiffs' do identify

incidents of police misconduct, those incidents occurred in different

localities and thus have no bearing on the City's liability.  *See Hicks-*

*Fields v. Harris Cnty.*, 860 F.3d 803, 810 (5th Cir. 2017) ("A successful

showing of . . . a pattern 'requires similarity and specificity . . . .'")

(quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir.

2009)).  For instance, Plaintiffs cite secondary sources that identify

police misconduct in New York.  Resp. ¶ 21.  Assuming the Court could

take notice of these allegations in the present posture,[19] none of

Plaintiffs' secondary sources address police misconduct under similar

circumstances that occurred in El Paso, Texas.  Thus, Plaintiffs'

---

[19] Plaintiffs cite the aforementioned secondary sources for the first time
in their Response.  Resp. ¶ 21.  In addition, Plaintiffs make a number of
factual allegations in their Response that do not appear in their
Amended Complaint.  *See, e.g.*, *id.* ¶ 2 (alleging an obscene gesture); *id.*
¶¶ 9, 14, 15 (alleging facts based on Plaintiff Morales' investigative file).
As noted by the Magistrate Judge, when considering a motion to
dismiss, "the Court can only consider 'the contents of the pleadings,
including attachments thereto."  R. & R. 19 n.12 (quoting *Collins v.
Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).
Plaintiffs do not object to the Magistrate Judge's determination that
these allegations could not be considered in the present posture.  In any
case, these allegations would not suffice to alter the rulings set forth by
the Court in this Order.

reliance on secondary sources to establish a pervasive and widespread practice is misplaced.[20]

After careful consideration, the Court concludes that Plaintiffs' allegations do not reasonably suggest an extant custom of tolerating police misconduct or of a code of silence that rises to the level of an official policy.  Consequently, in the absence of evidence of a "widespread and persistent practice," Plaintiffs cannot show that the City has the requisite knowledge to be held liable for Defendant E. Carrillo's use of force.  *Cf. Webster*, 735 F.2d at 842 ("Actual or constructive knowledge of such [a] custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.").  As Plaintiffs have failed to

---

[20] To the extent they address the City's practices, Plaintiffs allege that the City has not disciplined a single officer involved in off-duty assaults for the past ten years.  Resp. ¶¶ 21–24.  These allegations, while closer to the mark, do not suggest that the City has a practice of tolerating police misconduct.  Plaintiffs have not identified any specific incidents— aside from the facts of this case—where El Paso police officers have been involved in off-duty assaults.  The absence of disciplinary action does not suggest that similar incidents of off-duty assaults have actually occurred.  *See Piotrowski,* 237 F.3d at 582 ("[I]t is nearly impossible to impute lax disciplinary policy to the City without showing a pattern of abuses that transcends the error made in a single case.").

establish a practice rising to the level of official policy, the Court concludes that Plaintiffs have failed to state a plausible claim under *Monell*.

> ii.  *Failure to Train*

Next, the Court considers whether the City may be liable for Defendant E. Carrillo's conduct under a "failure-to-train" theory.  Resp. ¶ 24.

To state a claim against the City on this theory, Plaintiffs must plead facts plausibly suggesting that (1) "the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Ratliff*, 948 F.3d at 285 (quoting *Zarnow*, 614 F.3d at 170).  "To establish deliberate indifference, 'a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.'" *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)).

As discussed above, Plaintiffs have failed to identify a pattern of similar violations.  Absent an established pattern of violations, Plaintiffs cannot show that the City had the requisite knowledge to be held accountable for the alleged failure to train its employees.  *See id* ("For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.") (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 12 (5th Cir. 1998)).

Relatedly, Plaintiffs' pleadings do not suggest that the City's training policy caused the violations in question. Instead, Plaintiffs state in a conclusory fashion that absent a policy directing police officers not to observe a code of silence, "excessive force and false charges against the innocent are not just likely, but inevitable."  Resp. ¶ 25.  Yet without specific facts that suggest a causal connection between the City's alleged inaction and the parking-lot altercation, the Court concludes that Plaintiffs' have failed to state a claim against the City under a failure-to-train theory of liability.

For these reasons, the Court concludes that Plaintiff's Amended Complaint does not meet the standards for a *Monell* claim.

## IV.  CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant Aaron Carrillo's "Rule 12(b)(6) Motion to Dismiss" (ECF No. 16) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Enrique Carrillo's "Rule 12(b)(6) Motion to Dismiss" (ECF No. 15) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Ruben Cardenas' "Rule 12(b)(6) Motion to Dismiss" (ECF No. 14) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Gabriel Lechuga's "Rule 12(b)(6) Motion to Dismiss" (ECF No. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Miguel Carzoli's "Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Complaint and Demand for Jury Trial" (ECF No. 39) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Juan Ferrel's "Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Complaint and Demand for Jury Trial" (ECF No. 40) is **GRANTED**.

**IT IS FURTHER ORDERED** that the City of El Paso's "Rule 12 Motions to Dismiss and Brief in Support" (ECF No. 17) is **GRANTED**.

**FINALLY, IT IS ORDERED** that the stay on discovery imposed in Order (ECF No. 61), filed on April 17, 2020, is hereby **LIFTED,** and the parties **SHALL RESUME DISCOVERY**.

**SIGNED** this **19th day** of **February, 2021.**

 

_____

**PHILIP R. MARTINEZ**
**UNITED STATES DISTRICT JUDGE**