**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **FERNANDO MORALES,** *individually and on behalf of his minor children, F.M. and D.M.,* **and ZERENIA CARDOZA,** *in her individual capacity,* | § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **EP-19-CV-00217-KC-ATB** |
| **ENRIQUE CARRILLO, AARON CARRILLO, and RUBEN CARDENAS,** | § § § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE**

On this day, the Court considered "Defendant Sergeant Ruben Cardenas' Rule 56 Motion for Summary Judgment" (ECF No. 112) ("Cardenas's Motion"), filed by Defendant Ruben Cardenas ("Cardenas"), and "Defendants Sergeant Enrique Carrillo's and Aaron Carrillo's Joint Motion for Summary Judgment" (ECF No. 113) ("Carrillo Defendants' Motion"), filed by Defendants Enrique Carrillo ("E. Carrillo") and Aaron Carrillo ("A. Carrillo") (collectively "Carrillos" or "Carrillo Defendants").  The matter was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of Appendix C of the Local Court Rules for a Report and Recommendation on March 3, 2022, by United States District Judge David C. Guaderrama. (ECF No. 126).[1]

For the reasons set forth below, the Court **RECOMMENDS** that "Defendant Sergeant Ruben Cardenas' Rule 56 Motion for Summary Judgment" be **GRANTED** and "Defendants

---

[1] On March 16, 2022, United States District Judge David C. Guaderrama recused himself from the instant case, and the case was reassigned to United States District Judge Frank Montalvo.  (ECF No. 130).  Immediately thereafter, United States District Judge Frank Montalvo recused himself, and the case was reassigned to United States District Judge Kathleen Cardone.  (ECF No. 131).

Sergeant Enrique Carrillo's and Aaron Carrillo's Joint Motion for Summary Judgment" be **DENIED**.

## I.   BACKGROUND

### a.   Procedural Background

On July 1, 2019, Plaintiffs Fernando Morales ("Morales"), individually and on behalf of his minor children, F.M. and D.M., and Zirenia Cardoza ("Cardoza") (collectively "Plaintiffs") filed their "Original Petition" in County Court at Law Number Six in El Paso County, Texas. (ECF No. 1-2, p. 4-34).   Thereafter, Defendants removed the action to the United States District Court for the Western District of Texas on August 9, 2019.   (ECF No. 1).   On October 21, 2019, Plaintiffs filed their Amended Complaint, asserting claims against a variety of defendants arising from an altercation in a Walmart parking lot and Plaintiff's subsequent arrest.   (ECF No. 11).

Between November 1, 2019, and December 20, 2019, seven motions to dismiss were filed by the Defendants.   *See* (ECF Nos. 13-17, 39-40).   After a Report and Recommendation from this Court (ECF No. 69), the District Court dismissed Plaintiffs' claims against all Defendants except for Plaintiffs' claims against Defendants Cardenas, E. Carrillo, and A. Carrillo.   (ECF No. 83, p. 57).

On January 6, 2022, Defendant Cardenas filed his Motion for Summary Judgment.   (ECF No. 112).   The Carrillo Defendants filed their Motion for Summary Judgment on January 7, 2022.   (ECF No. 113).   After being granted an extension of time to file their response (Text Order dated January 19, 2022), Plaintiffs filed their "Plaintiffs' Combined Response to Defendants' Motions for Summary Judgment" ("Plaintiffs' Response") on January 24, 2022. (ECF No. 119).   On January 28, 2022, Defendant Cardenas filed his Reply.   (ECF No. 120). After the District Court granted the Carrillo Defendants "Unopposed Motion for Extension of

Time to File Reply" (ECF No. 121) (ECF No. 122), the Carrillo Defendants filed their Reply on February 7, 2022.  (ECF No. 123).

On February 14, 2022, the District Court denied Plaintiffs' "Unopposed Motion for Oral Argument on Pending Motions for Summary Judgment" (ECF No. 124), finding that "the pending motions for summary judgment can be decided on the briefing by the parties."  (ECF No. 125, p. 1).  After a referral from the District Court on April 11, 2022, this Court granted "Plaintiffs' Unopposed Motion for Leave to File Supplemental Brief in Response to Defendants' Motions for Summary Judgment" (ECF No. 133) (Text Orders dated April 11, 2022), and "Plaintiffs' Supplemental Combined Response to Defendants' Motions for Summary Judgment" ("Plaintiffs' Supplemental Response") (ECF No. 134) was filed thereafter.  The Carrillo Defendants filed their "Defendants Sergeant Enrique Carrillo's and Aaron Carrillo's Reply to Plaintiffs' Supplemental Combined Response to Defendants' Motions for Summary Judgment" ("Carrillo Defendants' Supplemental Reply") on April 18, 2022.  (ECF No. 135).  To date, Cardenas has not filed a supplemental reply.

b.      **Factual Background**[2]

On July 1, 2017, while Morales, Cardoza, and their minor children F.M. and D.M were traveling in Morales's Ford truck in a Walmart parking lot, a car driven by Defendant E. Carrillo turned left in front of the Ford pickup.  Morales had to stop suddenly to avoid a collision.  (ECF No. 119-1, p. 86, 4:30-4:45).  Defendant A. Carrillo was in the passenger seat of the vehicle being driven by E. Carrillo.  (ECF No. 113, p. 12).  Both vehicles then parked, with Morales exiting his truck and walking over to the other vehicle.  (ECF No. 119-1, p. 86, 4:40-4:50).

When Morales was outside of the Carrillo Defendants' vehicle, A. Carrillo exited the vehicle and grabbed Morales from behind, placing Morales in a "Rear Naked Choke Hold." (ECF No. 119-1, p. 32) ("Declaration of Fernando Morales Under Penalty of Perjury" [hereinafter Morales Affidavit]).  After A. Carrillo placed Morales in a chokehold, Morales's cousin Yesenia Jaquez ("Jaquez"), a passenger in Morales's vehicle, saw Morales and A. Carrillo

---

[2] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.  Specifically, many of the above facts are disputed, so the Court recounts the factual background in the light most favorable to the Plaintiffs as the non-movants.  *See EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).

Furthermore, many facts Plaintiffs present appear to serve no purpose other than to undermine the credibility or veracity of a Defendant's statements.  For example, while Cardenas proposed that he was dispatched to the scene of the altercation, Plaintiffs contend Cardenas arrived without being dispatched.  *See* (ECF No. 119, p. 6-7).  Since there are no facts in the record that Cardenas knew that a fellow officer was involved in the altercation until he arrived at the scene, the Court finds that it is immaterial whether Cardenas was dispatched to the scene.

Additionally, Plaintiffs assert that "[t]raffic tickets and resulting warrants are obviously a source of revenue for the City of El Paso.  Sgt. Cardenas does not comment on that either."  (*Id.* at p. 11) (internal citations omitted).  However, the Court finds that it is not a relevant fact whether traffic tickets are a source of revenue for the city or not, nor is it relevant whether Cardenas commented or did not comment on this alleged fact.  It appears to the Court that Plaintiffs raise these assertions only as an attempt to implicitly undermine Cardenas's character and the credibility of Cardenas's other statements contained in his affidavit.

However, at summary judgment, the Court must "refrain from making credibility determinations or weighing the evidence." *EEOC*, 773 F.3d at 694. (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  Therefore, the Court will not address any facts or arguments by Plaintiffs that appear to be presented solely to undermine a Defendant's or witness's credibility.  The Court will construe any disputed fact and all reasonable inferences in favor of Plaintiffs as the nonmoving party, but it will not ignore or discount an undisputed statement from a Defendant based upon Plaintiffs' apparent credibility arguments.

"falling backward together." (*Id.* at p. 19) ("Declaration of Yesenia Jaquez under Penalty of Perjury" [hereinafter Jaquez Affidavit]).

While the Carrillo Defendants had Morales sandwiched between them, with Morales facing upward, E. Carrillo "knelt on his right knee and began beating [Morales's] face using his forearm and fist like a hammer, with the forearm as the handle and the curled fist held rigid like the hammerhead." (*Id.*) (Jaquez Affidavit). Jaquez then tried "grabbing [E. Carrillo] and [tried] to pull him off, and yell[ed] that [Morales] was turning purple, blue, and other colors." (*Id.*) (Jaquez Affidavit). Jaquez noticed that Morales's "eyes were rolling backwards" and he was not able to breathe. (*Id.*) (Jaquez Affidavit). E. Carrillo "stopped punching [Morales] just long enough to swing his right forearm and fist back at [Jaquez], hitting [her] in [her] chest and causing [her] to lose [her] balance." (*Id.*) (Jaquez Affidavit).

E. Carrillo hit Morales in the face "at least ten times" and was "stopped only when several people came running to the fight and [tried] to restore order." (*Id.*) (Jaquez Affidavit). After being separated, E. Carrillo "came back and pushed [Morales] to the ground." (*Id.* at p. 33) (Morales Affidavit). As a result of the altercation, Morales suffered a fractured right eye socket, and needed four stitches in his left chin. (*Id.* at p. 34) (Morales Affidavit); *see also* (*Id.* at p. 117) (Morales's booking photograph).

Off-duty El Paso Police Department ("EPPD") Officer Pete Herrera ("Herrera") called 911 to report the altercation. (*Id.* at 105) (Herrera Sworn Witness Statement); (*Id.* at p. 93) (Herrera 911 audio call). When Herrera made the 911 call, there were six male individuals involved in what Herrera described as a "fist fight." (*Id.* at p. 93, 0:25-0:35). Later in the call,

Herrera stated, "it's Kiki from PIO . . . let me go help him out" and then hung up.  (*Id.* at p. 93, 2:30-2:46).[3]

The first police officer to respond to the incident at Walmart was Julio Guereca ("Guereca"), and Cardenas "arrived shortly afterward."  (*Id.* at p. 26) ("Declaration of Zirenia Cardoza Under Penalty of Perjury" [hereinafter "Cardoza Affidavit"]).  Morales observed Cardenas and E. Carrillo "hugging, laughing, talking and dancing," and the two "appeared to be happy to see one another."  (*Id.* at p. 33) (Morales Affidavit).

After Guereca arrived, "Guereca came over [to Plaintiffs] and began asking what happened.  Yesenia Jacquez [sic] did most of the talking, as Officer Guereca was taking notes on a small pad."  (*Id.* at p. 26) (Cardoza Affidavit).  After "just a short time" of Guereca talking with Jaquez and Cardoza, Cardenas "came over and took Officer Guereca aside."  (*Id.*) (Cardoza Affidavit).  Cardoza states that she believes "Cardenas did most of the talking, and Officer Guereca nodded" and that "[a]t the end of the conversation, Officer Guereca tore out the top few pages where he had been writing in the small notebook, and crumpled them in his hand."  (*Id.*) (Cardoza Affidavit).  However, Cardoza "did not see what [Guereca] did with [the torn-out notes]."  (*Id.*) (Cardoza Affidavit).

Cardenas then "made assignments to responding officers for interviewing witnesses and reviewing the surveillance videos at Wal-Mart [sic]."  (ECF No. 119-1, p. 7) (Cardenas's

---

[3] Plaintiffs appear to allege possible misconduct by Herrera.  *See* (ECF No. 119, p. 6) ("[Herrera's] help consisted of, according to Sgt. Cardenas, failing to state his initial correct impression that somebody was on the ground with other people beating him up, and falsely stating that he did not know of Sgt. Carrillo's involvement until he arrived at the 'fight.'  Herrera stuck to his story, at least through the PIO investigation.  There is nothing anywhere in the record of Sgt. Herrera ever mentioning that his first impression of the disturbance was somebody on the ground getting beaten up by others, or that he knew, during the call, that 'Kiki . . . the PIO' was involved before going to 'help.'") (citations omitted) (alterations in original).  To the extent Plaintiffs are asserting claims against Herrera, the Court notes that Herrera was previously dismissed from this case with prejudice, and a final judgment entered.  *See* (ECF Nos. 68, 69).  To the extent Plaintiffs are attempting to undermine the credibility of Herrera, a third-party witness, the Court notes that it refrains from making credibility determinations at summary judgment.  *See EEOC*, 773 F.3d at 694.

Undisputed Fact #6).[4]  Specifically, "Cardenas directed Lechuga to find out if Wal-Mart [sic] security cameras recorded any part of the incident."  (*Id.* at p. 8) (Cardenas's and Plaintiffs' Undisputed Fact #15).   Further, "Officer Lechuga viewed the Wal-Mart [sic] surveillance/security video."  (*Id.*) (Cardenas's and Plaintiffs' Undisputed Fact #16).   Cardenas then "interviewed Sgt. Herrera and his daughter," "spoke to several people who were in the area to determine whether any of these individuals were witnesses," and "met with the officers to find out what the witnesses [had] seen and heard."  (*Id.* at p. 7-8) (Cardenas's Undisputed Facts #7-9).[5]  Further, "Cardenas interviewed [E.] Carrillo to find out his version of the incident."  (*Id.* at p. 8) (Cardenas's and Plaintiffs' Undisputed Fact #10).

The Carrillo Defendants told Cardenas that Morales had been the initial aggressor of the altercation.  (ECF No. 112-1, p. 10) (Cardenas Affidavit) ("[E.] Carrillo reported feeling vulnerable to an assault as he sat in his car and ultimately got out of his vehicle as well.  As soon as he did so, he reported that he was assaulted by Mr. Morales.").   Further, the bystanders Cardenas interviewed claimed that Plaintiff Morales continued to be aggressive even after bystanders broke up the altercation.  (ECF No. 112-1, p. 10-11) (Cardenas Affidavit) ("At this time, several bystanders held on to Mr. Morales who continued to struggle as if he wanted to continue fighting. . . . After the witnesses let Mr. Morales go, they indicated that Mr. Morales lunged towards [E.] Carrillo one more time punching [E.] Carrillo in the face."); (*Id.* at p. 43) (Civilian Statement of Joshua Pena ("Pena")); (*Id.* at 45) (Civilian Statement of Joseph Darden)

---

[4] The Court notes that Plaintiffs only dispute this fact as incomplete, since Plaintiffs argue that "[t]he applicable directive from the department requires that the investigation be conducted by the responding officer."  (ECF No. 119-1, p. 7) (Plaintiffs' objection to Undisputed Fact #6).   As Plaintiffs only objection to this fact pertains to whether Cardenas's actions were proper and not to the veracity of the fact, the Court treats Cardenas's Undisputed Fact #6 as undisputed.

[5] The Court notes that Plaintiffs only dispute these facts "to the extent that it implies Cardenas had any interest in exculpatory evidence" and that "Herrera withheld information about how he had seen someone on the ground being beaten up and then ended the call when he recognized 'Kiki from PIO.'"  (ECF No. 119-1, p. 7-8) (Plaintiffs' objections to Undisputed Facts #7-9).   Therefore, the Court finds that the facts that Cardenas interviewed these witnesses and conferred with other officers are undisputed.

("As soon as we separated them, the person in the choke hold with the blood on his face continued to be aggressive and kept going on the younger individual.  The guy with the blood on his face kept attacking them . . . .").

Thereafter, Cardenas interviewed Morales, asking Morales to "explain to [Cardenas] what had occurred."  (ECF No. 112-1, p. 11) (Cardenas Affidavit).  Cardenas confronted Morales with witness statements saying that Morales had "rushed [E.] Carrillo's vehicle and tried opening his door," to which "Morales again explained that he was just trying to get license and insurance information."  (*Id.* at p. 12) (Cardenas Affidavit).  Cardenas told Morales that his statements were "not consistent with all of the witnesses who had explained that Mr. Morales was the aggressor."  (*Id.*) (Cardenas Affidavit).  During his interview, Cardenas noted that Morales "appeared intoxicated" since "Morales had glossy, red eyes" and Cardenas "could smell the faint odor of alcohol coming from his person."  (*Id.* at p. 11) (Cardenas Affidavit).  Morales states in his Affidavit that he "was never asked to provide [his] entire side of the case" and "[e]ventually, [] Cardenas told [Morales that he] was going to be arrested, because [Morales] was the aggressor in the fight."  (ECF No. 119-1, p. 33) (Morales Affidavit).  Cardenas handcuffed Morales and "after about two minutes," put Morales in Lechuga's patrol unit."  (*Id.*) (Morales Affidavit).

"After about two hours of investigation," Cardenas began to interview Morales's female companions.  (ECF No. 119, p. 10); *see also* (ECF No. 119-1, p. 27) (Cardoza Affidavit).  Cardenas took down the companions' personal information and "conducted background checks." (*Id.*) (Cardoza Affidavit).  When Cardenas returned to question Cardoza, Cardoza states that Cardenas kept interrupting her, repeatedly telling her to stop lying.  (*Id.*) (Cardoza Affidavit).  Cardenas then told Cardoza that he would have her arrested for outstanding traffic warrants if

she would not cooperate.  (*Id.*) (Cardoza Affidavit).  After Cardoza told Cardenas that "[i]f [Cardenas was] not going to listen to what [Cardoza has to] say, then [she was] done talking," Cardenas arrested Cardoza for her outstanding traffic warrants.  (*Id.* at p. 28) (Cardoza Affidavit).  After she was arrested, Cardoza twice asked Cardenas if she could change out of her swimsuit and into her regular clothes, but Cardenas refused this request both times.  (*Id.*) (Cardoza Affidavit).

"Throughout the evening," Jaquez asked Cardenas multiple times if she and Morales's other companions could see him to "see if he was all right [sic]," but Cardenas "curtly refused every time [she] asked."  (*Id.* at p. 21) (Jaquez Affidavit).  Finally, Cardenas answered "no, and told [Jaquez that] if [she] kept asking, [Cardenas] would arrest [her] for public intoxication." (*Id.*) (Jaquez Affidavit).  Jaquez states that after this encounter, she "refused to talk to [Cardenas]." (*Id.*) (Jaquez Affidavit).

While Morales was in the patrol car, "an EMS ambulance and a fire engine arrived," but Cardenas told the EMS personnel that "the Police Department did not need their help."  (ECF No. 119-1, p. 34) (Morales Affidavit). Thereafter, "Lechuga drove [Morales] to a Las Palmas medical facility on Resler, about a three-minute drive away."  (*Id.* at p. 34) (Morales Affidavit). When they arrived at Las Palmas, Lechuga told Morales that he would "get a rag for [Morales] to clean [himself] up, and then [Lechuga] asked [Morales] whether [he had] been drinking earlier in the day." (*Id.*) (Morales Affidavit).  Morales told Lechuga that he "had consumed three beers, but used part of the beer as marinade for [his] barbecue." (*Id.*) (Morales Affidavit).  While at Las Palmas, Morales received medical care for his injuries, including taking "two vials of blood

from [Morales's] arm after obtaining [his] written consent,"[6] taking "a CT scan . . ., which revealed that [Morales] had a fractured right eye socket," and receiving four stiches in his left chin. (*Id.*) (Morales Affidavit).

Morales was acquitted by a jury of the assault charge on June 26, 2018. *See* (ECF No. 119-1, p. 148). On May 30, 2018, Morales was indicted for felony DWI. (*Id.* at p. 150). Thereafter, on May 26, 2021, the felony DWI case was dismissed because "[t]he evidence [was] insufficient." (*Id.* at p. 153).

## II.    LEGAL STANDARDS

### a.    Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and a fact is material if it might affect the outcome of the suit." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citations omitted). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

---

[6] The Court notes that Morales's blood test showed that Morales had "0.078 (+/- 0.004) grams of alcohol per 100 milliliters of blood[] (99.7% Confidence Level)," "24 nanograms per milliliter" of "THC metabolite," and "0.07 milligrams per liter" of "cocaine metabolite." (ECF No. 112-1 p. 245-46). Plaintiffs do not dispute the test results, but they argue that the "[t]ests results show blood alcohol level below presumptive intoxication amount, "object to relevance and any implication of illegality" regarding the THC results, and "object on grounds of relevance and testimony about reliability of small amount" regarding the cocaine results. (ECF No. 119-1, p. 9).

If the moving party meets this initial burden, "the onus shifts to 'the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 323). The Court must draw all reasonable inferences in favor of the nonmoving party and refrain from making credibility determinations. *Id.*

**b.     Qualified Immunity**

Qualified immunity protects "state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Jackson v. City of Hearne, et al.*, 959 F.3d 194, 200 (5th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 200-01 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

"The plaintiff has the burden of establishing a constitutional violation and overcoming a [qualified immunity] defense." *Id.* (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)). "[L]ower courts have discretion to decide which of the two prongs of [the qualified immunity] analysis to tackle first." *Id.* at 200 (quoting *Ashcroft*, 563 U.S. at 735). Further, courts may "resolve the case on a single prong." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020).

### c.     Self-Defense

"[W]ith the exception of the rule of evidence which gives a person accused of a crime the benefit of a reasonable doubt, the law of self-defense is the same in both civil and criminal cases."  *Rogers v. Peeler*, 146 S.W. 3d 765, 769 (Tex. App. 2004).  Section 83.001 of the Texas Civil Practice & Remedies Code provides that a person "who uses force . . . that is justified under Chapter 9, Penal Code, is immune from civil liability for personal injury . . . that results from the [person's] use of force."  Tex. Civ. Prac. & Rem. Code § 83.001.

Section 9.31 of the Texas Penal Code states, in relevant part, that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force."  Tex. Penal Code § 9.31(a).

### d.     Title 42 U.S.C. § 1983 Conspiracy

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act."  *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995).  "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based.  Bald allegations that a conspiracy existed are insufficient."  *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987).  Further, "[t]he plaintiff must not only allege facts that establish (1) the existence of a conspiracy involving state action, but also (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.  No deprivation, no § 1983 conspiracy."  *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (internal quotation marks and citations omitted).

However, "when each state action alleged to have harmed the plaintiffs [is] determined to be qualifiedly immune, there [is] no need to reach the issue of whether a conspiracy existed to engage in those actions." *Hale*, 45 F.3d at 920-21 (citing *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187-88 (5th Cir. 1990)).

## III.   ANALYSIS[7]

### a.   Carrillo Defendants' Motion for Summary Judgment[8]

In their Motion, the Carrillo Defendants argue that they are entitled to summary judgment as a matter of law because they are "shielded by qualified immunity and self-defense." (ECF No. 113, p. 3). In response, Plaintiffs argue that "Plaintiffs have made clear with their declarations, excerpts of criminal trial testimony, and exhibits that there are multiple genuine issues of material fact precluding summary judgment." (ECF No. 119, p. 15).

### 1.   Altercation in the Walmart Parking Lot

The Carrillo Defendants argue that they "used only that amount of force that was reasonable and immediately necessary to prevent further assault by Plaintiff [Morales]." (ECF No. 113, p. 8). The Carrillo Defendants argument of self-defense and qualified immunity centers

---

[7] The Court notes that Plaintiffs' Response is generally devoid of case law or argument. Instead, Plaintiffs only list proposed disputed material facts and assert in conclusory fashion that "[t]he totality of Plaintiffs' summary judgment evidence raises a genuine issue of material fact" without outlining why those facts are material or how they would entitle Plaintiffs to judgment against Defendants. *See* (ECF No. 119, p. 15-19). One exception is where Plaintiffs dispute Defendant Cardenas's arguments relating to the intercorporate conspiracy doctrine. *See* (*Id.* at p. 19-20). Therefore, the Court here attempts to apply the relevant law to the facts presented in Plaintiffs' Response. If to any extent the Court mischaracterizes Plaintiffs' intended arguments or application of law to facts, it is due to Plaintiffs' failure to diligently present how the disputed facts are material through argument or legal authority. *See Munoz v. State Farm Lloyds of Texas*, 522 F.3d 568, 573 (5th Cir. 2008) ("The invited error doctrine provides that a party may not complain on appeal of errors that he himself invited or provoked the court to commit.") (internal quotes and alteration omitted); *Cf. Barker v. Norman*, 651 F.2d 1107, 1129 n.26 (5th Cir. 1981) ("[A Magistrate] judge, however, is neither required nor permitted to become counsel for any party . . . .").

[8] In their Motion for Summary Judgment, the Carrillo Defendants argue that "Plaintiffs Zirenia Cardoza, F.M., and D.M.'s bystander claims . . . are barred because Plaintiff Morales is not entitled to any recovery." (ECF No. 113, p. 8). As discussed below, the Court recommends denying the Carrillo Defendants' Motion for Summary Judgment regarding Morales's claims. Therefore, the Court will not address whether the Carrillo Defendants are entitled to summary judgment as to the bystander claims since the Carrillo Defendants only argument is that the bystander claims are barred if "Morales is not entitled to recover against [the Carrillo] Defendants as a matter of law." (*Id.*).

around the allegation that Plaintiff Morales was the initial aggressor.  *See* (*Id.*) ("Walmart employee . . . noted that [Morales] . . . was trying to 'go at' another subject . . . was yelling and cussing . . . [and] was trying to provoke a fight.  Border Patrol Agent . . . noted that [Morales] continued to be aggressive and kept going at Defendants") (internal citations omitted).  However, Plaintiffs argue that the "critical part of [the Carrillo Defendants'] motion says only that Mr. Morales tried to get even **after** the Carrillos had teamed up to beat [Morales] severely."  (ECF No. 119, p. 15) (emphasis in original).

On summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party and refrain from making credibility determinations.  *See EEOC*, 773 F.3d at 694.  Therefore, the Court will draw all reasonable inferences in favor of Plaintiffs, namely, that Morales was not the initial aggressor and that the Carrillo Defendants initially attacked Morales without provocation.  *See* (ECF No. 119-1, p. 32).

Assuming the Carrillo Defendants were the initial aggressors, it follows that they are not entitled to self-defense as Morales was not attempting or using any unlawful force against them. *See* Tex. Penal Code § 9.31(a).  Further, E. Carrillo would not be entitled to qualified immunity, since it is objectively unreasonable for an officer to assault a civilian without provocation.  *See Pennington v. Baylous*, No. Civ. A. H-03-4163, 2005 WL 2241014, at *4 (S.D. Tex. Sept. 15, 2005) (finding that "the [c]ourt [could not] grant summary judgment on the issue of qualified immunity" where defendant officers claimed they were victims of assaults by the plaintiffs, but plaintiffs alleged that they were the victims of unprovoked assaults by the defendant officers).

Accordingly, the Court recommends that the Carrillo Defendants' Motion be denied, since there is a genuine issue of material fact as to which party was the initial aggressor during the altercation in the Walmart parking lot.

## 2.    False Charges

In Plaintiffs' Amended Complaint, Plaintiffs allege that E. Carrillo "deliberately lied in order to get Mr. Morales charged to cover up his own unlawful use of force."  (ECF No. 11, p. 12).  The Carrillo Defendants argue in their Motion for Summary Judgement that "Plaintiffs' claims that [E.] Carrillo lied to cause Mr. Morales to be charged are mere conjecture and speculation on the part of Plaintiffs."  (ECF No. 113, p. 6).

The Fourteenth Amendment protects the "due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015) ("*Cole I*"), *judgment vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016) *and opinion reinstated in part*, 935 F.3d 444 (5th Cir. 2019) (en banc) ("*Cole II*").  In *Cole I*, the Fifth Circuit held that a violation of substantive due process occurs where state action "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Id.* at 772 (quoting *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. Ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012)).  Specifically, the Fifth Circuit held that allegations that police officers fabricated evidence gave rise to a Fourteenth Amendment violation, reasoning that "if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit."  *Id.* at 770 (quoting *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004)).

Here, when considering the Carrillo Defendant's Motion to Dismiss, the District Court held that "Plaintiffs' allegations meet the standards for a false-arrest claim under the Fourteenth Amendment."  (ECF No. 83, p. 28).

Similar to Plaintiffs claim regarding the altercation analyzed above, the Court finds that the resolution of Plaintiffs' false charges claims depend primarily on the disputed fact of who was the initial aggressor during the altercation in the Walmart parking lot.   The Carrillo Defendants contend that Morales was the initial aggressor during the altercation, and therefore E. Carrillo's statements to the police were accurate (ECF No. 113, p. 6-8), while Plaintiffs argue that the Carrillo Defendants were the initial aggressors, and therefore E. Carrillo's statements to the police were lies to have Morales falsely arrested and prosecuted in order coverup E. Carrillo's own misconduct (ECF No. 119-1, p. 25-26) (Cardoza Affidavit); (ECF No. 119-1, p. 32) (Morales Affidavit).   Therefore, the Court finds that there is a genuine dispute of material fact as to who was the instigator of the altercation in the Walmart parking lot, and therefore, there is a genuine dispute of material fact as to the veracity of the statements that E. Carrillo gave to the police.

In sum, the Court finds that a reasonable jury could find that the Carrillo Defendants were the initial aggressors and that E. Carrillo made false statements to the police in order to have Morales arrested and convicted of assault.   Accordingly, the Court recommends that the Carrillo Defendants' Motion be denied as to Plaintiffs' false charges claim.

###### b.      Defendant Cardenas's Motion for Summary Judgment[9]

Cardenas argues that he "is entitled to summary judgment as a matter of law . . . because he did not violate any of Plaintiffs' constitutional rights . . . and, alternatively, even if he did violate Plaintiffs' constitutional rights, he is entitled to qualified immunity because his actions were objectively reasonable in light of clearly established law." (ECF No. 112, p. 12). Further, Cardenas argues that "Plaintiffs' contention that Sgt. Cardenas conspired with [E.] Carrillo to prevent any investigation and to immediately arrest Morales for causing a motor vehicle collision is not supported by any competent summary judgment evidence." (*Id.* at p. 13). In response, Plaintiffs argue that "[t]he totality of Plaintiffs' summary judgment evidence raises a genuine issue of material fact about whether [Cardenas] unmistakably set out to cause the arrest, incarceration, and trial of a man he either knew or should have known to be innocent." (ECF No. 119, p. 20-21).

The Court notes that Plaintiffs do not state what alleged constitutional violation is the basis of the conspiracy in which Defendant Cardenas is involved. *See* (ECF No. 119, p. 16-21). However, in Plaintiffs' Amended Complaint, Plaintiffs assert that "[t]ogether, the Carrillos and Sgt. Cardenas knowingly imposed false charges, supported by perjurious testimony, against Mr.

---

[9] The Court notes that Cardenas argues that "[u]nder the intracorporate conspiracy doctrine, a plaintiff cannot state a conspiracy claim against police of the same department, because the officers and the department are a single entity that is 'incapable of conspiring with itself for the purposes of § 1983.'" (ECF No. 112, p. 17) (quoting *Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997)). In response, Plaintiffs argue that "the authorities [relied upon by Cardenas] are clearly distinguishable" from the instant case. (ECF No. 119, p. 19). Furthermore, Cardenas does not raise any argument regarding the intercorporate conspiracy doctrine in his Reply. *See* (ECF No. 120).

However, as Plaintiffs describe in their Response, there is a question of fact as to whether E. Carrillo was acting as an on-duty officer due to his "failure to identify himself as a police officer and the criminal complaint for misdemeanor assault rather than on a public servant, which is a felony." (ECF No. 119, p. 16). Further, as discussed below, the Court finds no summary judgment evidence to support a conspiracy claim against Cardenas. Therefore, the Court declines to make further findings on the applicability of the intracorporate conspiracy doctrine to the instant case. *See Jessup v. Ketchings*, 482 F.3d 336, 345 n.4 (5th Cir. 2007) ("Because we hold that summary judgment was proper on [plaintiff's] claim, we need not address [defendant's] remaining arguments on this claim."); *Urdy v. Texas Mut. Ins. Co.*, No. 1:18-CV-1048-LY, 2020 WL 9809988, at *10 (W.D. Tex. July 16, 2020) ("As summary judgment succeeds on this claim for other reasons, the court need not address this issue.").

Morales in order to protect the guilty parties, the Carrillos." (ECF No. 11, p. 10). When considering the motions to dismiss, the District Court "determine[d] that Plaintiffs' [underlying constitutional violation] allegations [against E. Carrillo met] the standards for a *false-arrest claim* under the Fourteenth Amendment." (ECF No. 83, p. 28) (emphasis added). Therefore, the Court will analyze Plaintiffs' claim of "false charges" as a claim of false arrest. *See* (ECF No. 83, p. 28).

### 1.    False Arrest

"A constitutional claim for false arrest . . . 'requires a showing of no probable cause.'" *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019), cert. denied, 140 S. Ct. 220 (2019) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)). "Probable cause is established by 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Arizmendi*, 919 F.3d at 897 (quoting *Hilton*, 568 F.3d at 204). "If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)) (alterations in original).

Here, contrary to Morales's claims in his Amended Complaint that he was arrested for causing a motor vehicle collision (ECF No. 11, p. 6), Morales was arrested for assault and DWI. (ECF No. 112-1, p. 146, 212-13).

First, Cardenas contends that he had probable cause to arrest Morales for assault. (ECF No. 112, p. 15). It is undisputed that the Carrillo Defendants told Cardenas that Morales had been the initial aggressor of the altercation. (ECF No. 112-1, p. 10) (Cardenas Affidavit) ("[E.]

Carrillo reported feeling vulnerable to an assault as he sat in his car and ultimately got out of his vehicle as well.  As soon as he did so, he reported that he was assaulted by Mr. Morales."). Further, Cardenas interviewed several bystanders who claim that Plaintiff Morales continued to be aggressive even after bystanders broke up the altercation.  (ECF No. 112-1, p. 10-11) (Cardenas Affidavit) ("At this time, several bystanders held on to Mr. Morales who continued to struggle as if he wanted to continue fighting. . . . After the witnesses let Mr. Morales go, they indicated that Mr. Morales lunged towards [E.] Carrillo one more time punching [E.] Carrillo in the face."); (*Id.* at p. 43) (Civilian Statement of Joshua Pena ("Pena")); (*Id.* at 45) (Civilian Statement of Joseph Darden) ("As soon as we separated them, the person in the choke hold with the blood on his face continued to be aggressive and kept going on the younger individual.  The guy with the blood on his face kept attacking them . . . .").  While Plaintiffs dispute the context and circumstances surrounding the facts of the accounts given by the eyewitnesses to Cardenas, they do not dispute that the eyewitnesses gave these accounts to Cardenas at the scene of the altercation or the veracity of these statements by the eyewitnesses.  (ECF No. 119, p. 17) ("In addition to interviewing the father and son, [Cardenas] interviewed other witnesses at the scene who could only talk about what happened after the initial assault and beat down, when Mr. Morales was understandably enraged about what had happened to him."); (*Id.*) (arguing that Morales's "women companions . . . were obviously the ones most likely to have seen the complete altercation and not just Mr. Morales' understandable reaction to it"); *see also* (ECF No. 119-1, p. 14) (Plaintiffs' Response to the Carrillo Defendants Undisputed Facts) (Plaintiffs' response of "Disputed as to any implication that this occurred before the attack on Mr. Morales" regarding the facts that "Pena reported that [Morales] was yelling and cussing," "Pena reported

that [Morales] was trying to provoke a fight," and "Border Patrol Agent Joseph Darden ("Darden; [sic]) reported Plaintiff as the 'aggressive guy'").

The Fifth Circuit has previously held that a police officer had probable cause at the time of an arrest under similar circumstances.  *See, e.g.*, *Cooper v. City of La Porte Police Department*, 608 Fed. App'x 195, 200 (5th Cir. 2015) ("Importantly, while [the plaintiff] disputes the accounts given by the eyewitnesses, she does not dispute that they gave these accounts to the police over the phone and at the scene. . . . Therefore, while [the plaintiff] presents disputes of fact, these are not disputes of *material* fact that preclude summary judgment. . . .") (emphasis in original); *McCoy v. Housign Authority of New Orleans*, No. CV 15-298, 2016 WL 2992528, at *17-18 (E.D. La. May, 24, 2016) (granting summary judgment on qualified immunity when the defendant officer arrested plaintiff after witnessing an altercation where plaintiff and the other combatant claimed the other person was the initial aggressor), *aff'd*, 714 F. App'x 322 (5th Cir. 2017).  Therefore, weighing the totality of the facts and circumstances within Cardenas's knowledge at the moment of arrest, the Court finds that Cardenas was entitled to believe the Carrillo Defendants' and bystanders' statements and disbelieve Morales when determining that Morales was the initial aggressor in the altercation.  *U.S. v. Nunez-Sanchez*, 478 F.3d 663, 666 (5th Cir. 2007) ("Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.") (internal quotes omitted); *see also Cooper*, 608 Fed. App'x at 200 ("[The defendant officer] "was entitled to credit the eyewitness statements and to disbelieve [the plaintiff's] denial of their statement.").  Accordingly, the Court finds that Cardenas had probable cause to arrest Morales for assault, and therefore, there is no cognizable claim for false arrest against Cardenas.  *See*

*Deville*, 567 F.3d at 164 ("If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails.") (quoting *Wells*, 45 F.3d at 95).

Furthermore, Cardenas contends that he also had probable cause to arrest Morales for DWI. (ECF No. 112, p. 15). Plaintiffs do not dispute that Morales smelled of alcohol when Cardenas initially interviewed him or had a glossy eye. Instead, Plaintiffs argue that the smell of alcohol was more potent due to Morales's blood being on his face, and that his eye was glossy due to "trauma to the face and tears from the pain and emotional reaction." (ECF No. 119, p. 9). Further, it is undisputed that after his arrest, Morales told Sgt. Lechuga that he "had consumed three beers, but used part of the beer as marinade for my barbecue." (ECF No. 119-1, p. 34) (Morales Affidavit). Therefore, the Court finds that Morales smelling of alcohol and having a glossy eye, in addition to witnesses' statements that Morales continued to attempt to "go after" the Carrillo Defendants (ECF No. 112-1, p. 43, 45) (Civilian Statements of Joshua Pena and Joseph Darden) are sufficient to establish probable cause. *See Rife v. City of Dallas*, 91 F.3d 139, 139 (5th Cir. 1996) (per curiam) (finding probable cause existed when a suspect was stopped for speeding, "smelled of alcohol," and "had bloodshot eyes and stumbling speech"); *Forbes v. Harris County, Texas*, No. CV H-17-2256, 2019 WL 2085670, at *7-8 (S.D. Tex. May, 13, 2019) (finding probable cause existed where officer found receipts for alcoholic drinks purchased that night in suspect's wallet, suspect smelled of alcohol, and suspect's eyes were glossy and red). Accordingly, the Court finds that Cardenas had probable cause to arrest Morales for DWI, and therefore, there is no cognizable claim for false arrest against Cardenas. *See Deville*, 567 F.3d at 164.

Since the Court finds that there is no cognizable false arrest claim against Cardenas, the Court further finds that there is no claim of conspiracy against Cardenas.  *See Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) ("No deprivation [of a civil right], no § 1983 conspiracy.").  Accordingly, the Court recommends that Cardenas's Motion be granted, since Plaintiffs have failed to provide competent summary judgment evidence to establish a constitutional violation occurred regarding Morales's arrest.

## 2.       Conspiracy

Assuming, *arguendo*, that there was no probable cause for Morales's arrest, the Court turns to whether Plaintiffs have provided sufficient summary judgment evidence to support a claim that Cardenas was a party to a civil conspiracy "to cause the arrest, incarceration, and trial of a man he either knew or should have known to be innocent."  (ECF No. 119, p. 20-21). Cardenas argues that "Plaintiffs' contention that . . . Cardenas conspired with [E.] Carrillo to prevent any investigation and to immediately arrest Morales for causing a motor vehicle collision is not supported by any competent summary judgment evidence."  (ECF No. 112, p. 13).

### A.       *Plaintiffs' Authority is Distinguishable*

Plaintiffs argue that "[t]he systemic practice of automatically treating civilians injured by police as subjects and police officers as victims is troubling," pointing to the case *Ramirez v. Escajeda*, EP-17-CV-00193-DCG, 2021 WL 3713064 (W.D. Tex. August 20, 2021) and arguing that "Cardenas'[s] conduct is properly characterized as '*Ramirez v. Escajeda* plus.'"  (ECF No. 119, p. 16).

While Plaintiffs attempt to directly compare the conduct in *Ramirez* to Cardenas's conduct in the instant case, the Court finds that the claims and facts in *Ramirez* are distinguishable from the instant case's claims and facts.  Although *Ramirez* is the only case

Plaintiffs cite in support of their argument that Cardenas's conduct is sufficient to support a civil conspiracy claim, Plaintiffs do not recount any of the facts of *Ramirez*. Due to the shocking nature of the underlying facts in *Ramirez*, the Court finds it helpful to briefly recount the factual basis of *Ramirez* here.

In *Ramirez*, an El Paso Police Department ("EPPD") officer responded to a call from a woman who reported that her son was attempting to commit suicide. *Ramirez*, 2021 WL 3713064, at *1. When the officer arrived at the house, he approached the backyard and "drew his service weapon." *Id.* "Once in the backyard, [the officer] shined his flashlight on [the son] and saw him with a rope around his neck that was connected to a basketball hoop." *Id.* As the officer approached, he reportedly saw the son "staring forward with his hands clenched with tight fists to the part of the rope that was around his neck." *Id.* "After perceiving that his verbal commands were unsuccessful," the officer approached the son, holstered his service weapon and drew out and deployed his taser on the son. *Id.* "During the tasing, [the son's] body tensed, and [the officer] heard a 'crunch' and saw [the son] squeeze his fists even harder." *Id.* The officer then removed the rope from around the son's neck only after the officer had tased him. *Id.* Although the officer felt a faint pulse, the son was taken to the emergency room and died shortly thereafter. *Id.*

Here, Plaintiffs argue that Cardenas "not only targeted the victim instead of the perpetrator, but committed numerous acts which show that he deliberately protected his fellow officer by putting the innocent victim on trial." (ECF No. 119, p. 16). Without further argument or explanation, Plaintiffs list a series of "acts by which [Cardenas] did this," including: 1) that Cardenas arrived to the scene of the altercation without being dispatched and did not call his Lieutenant in accordance with Departmental policy; 2) Cardenas's friendly behavior when

interacting with the Carrillo Defendants; 3) the order in which Cardenas chose to interview the parties and witnesses; 4) Cardenas's accusatory and hostile tones while interviewing and interacting with Plaintiffs; 5) Cardenas's choice for the El Paso Police to drive Morales to a nearby medical facility instead of allowing EMS or the Fire Department to check on his condition; and 6) arresting Cardoza for unpaid warrants and not allowing her to change out of her bathing suit before being taken into custody.  (ECF No. 119, p. 17-19).

The disturbing facts of *Ramirez* are clearly distinguishable from the instant case.  The court in *Ramirez* considered the facts that an officer was called to help prevent a suicide, but when he encountered the plaintiff with a rope around his neck, the officer decided to deploy his taser on the plaintiff, which resulted in the plaintiff's death.  *Ramirez*, 2021 WL 3713064, at *1. Here, by contrast, Cardenas was responding to a report that there was an altercation in a Walmart parking lot,[10] Cardenas never used any weapon or force against Morales, and Cardenas directed that Morales receive medical care at Las Palmas.  *See* (ECF No. 119, p. 6-11).  Furthermore, unlike the plaintiff in *Ramirez*, Morales did not die as the result of Cardenas's actions.  In sum, the Court finds that the *Ramirez* facts are distinguishable from the facts present here.

In addition to the factual distinctions, the Court finds that the claims in *Ramirez* are distinguishable from the instant case.  Notably, there was no conspiracy claim present in *Ramirez*.  To the extent Plaintiffs are attempting to compare the claims against Cardenas to the claims against the defendant officer in *Ramirez*, the Court notes that the claims against the officer in *Ramirez* were for the alleged use of excessive force, and not for the charge of conspiracy to bring false charges.  *Compare Ramirez*, 2021 WL 3713064, at *2, *with* (ECF No. 11, p. 10-12) (Amended Complaint alleging imposition of false charges claim against Cardenas).

---

[10] The Court notes that Plaintiffs dispute whether Cardenas was actually dispatched to the scene or instead arrived without being dispatched.  *See* (ECF No. 119, p. 6-7).

Furthermore, to the extent Plaintiffs are attempting to compare the claims against Cardenas to the claims against the City of El Paso in *Ramirez*,[11] the Court notes that Cardenas cannot be held liable as a municipality, like the City of El Paso, for alleged problematic overarching policies. *Compare Ramirez*, 2021 WL 3713064, at *2, *with* (ECF No. 11, p. 2) (Amended Complaint suing Cardenas "in his individual capacity").  In fact, the Court notes that Plaintiffs' municipality liability claims against the City of El Paso have already been dismissed from the instant case. *See* (ECF No. 83, p. 57) (Order Granting the City of El Paso's Motion to Dismiss).

In sum, the Court finds that the facts and claims in *Ramirez* to be distinguishable from the instant case.  Therefore, the Court finds no merit in Plaintiffs' assertion that Cardenas's actions were "*Ramirez v. Escajeda* plus."

> **B.      The Summary Judgment Record is Distinguishable from the Record at the Motion to Dismiss**

Plaintiffs correctly note at the beginning of their Response that the District Court "issued a 58-page opinion which controls the issues presented from then to now."  (ECF No. 119, p. 1). Specifically, Plaintiffs assert "[t]he question now is whether Plaintiffs have evidence to support [the] allegations [in Plaintiffs Amended Complaint]."  (*Id.* at p. 2).

However, the Court finds that the evidentiary record here is quite distinguishable from the factual allegations before the District Court when considering Cardenas's Motion to Dismiss. When the District Court denied Cardenas's Motion to Dismiss the claims of civil conspiracy, the District Court considered the following relevant facts:

---

[11] From Plaintiffs' citation to *Ramirez*, it appears to the Court that Plaintiffs are "respectfully draw[ing] this Court's attention" to the claims in *Ramirez* that the municipality defendant "fail[ed] to pursue criminal or disciplinary charges or support criminal or disciplinary action against officers . . . who have deprived citizens and residents of El Paso of their constitutional rights."  *Ramirez*, EP-17-CV-00193-DCG, 2021 WL 3713064, at *2.  Specifically, Plaintiffs cite to the *Ramirez* court's analysis that the municipality defendant "regularly and consistently investigates officer-involved shootings as assaults on the police officers who used force" and "did not gather sufficient evidence to help resolve witness contradictions or provide such evidence to [the investigating body of officer-involved shootings."  *See* (ECF No. 119, p. 16) (citing *Ramirez*, EP-17-CV-00193-DCG, 2021 WL 3713064, at *46-47).

> (1) that Defendant Cardenas, upon arriving at the parking lot, stopped first to speak and laugh with the Carrillo Defendants, (2) that, after speaking with the Carrillo Defendants, Defendant Cardenas announced his decision to arrest Plaintiff Morales for causing a motor vehicle collision even though no collision had occurred, (3) that Defendant Cardenas then "called out" and instructed Officer Guereca to discard the paper containing his investigative notes because Defendant Cardenas "did not need any of the information since the decision had already been made to arrest [Plaintiff] Morales," and (4) that Defendant Cardenas, after speaking to a few bystanders, returned to speak and laugh with the Carrillo Defendants.

(ECF No. 83, p. 32) (internal citations omitted) (alteration in original). Additionally, the District Court weighed the allegation that "[w]hen Plaintiff Cardoza refused to cooperate [with Defendant Cardenas's requests to get information that could be used against Plaintiff Morales], Defendant Cardenas retaliated by instructing another officer to arrest her for outstanding traffic warrants and by prohibiting her from changing into street clothes" as well as the allegation that "when Emergency Medical Services officers arrived at [the] scene, Defendant Cardenas prevented them from speaking with, or treating Plaintiff Morales, despite his visible injuries." (*Id.* at p. 32-33).

Here, many of the facts pertinent to Defendants' motions to dismiss are not present in the current record. For example, there is no evidence that Cardenas immediately announced his decision to arrest Morales for causing a motor vehicle collision after only speaking with the Carrillo Defendants. Instead, Cardenas first "made assignments to responding officers for interviewing witnesses and reviewing the surveillance videos at Wal-Mart [sic]," including "direct[ing] Lechuga to find out if Wal-Mart [sic] security cameras recorded any part of the incident." (ECF No. 119-1, p. 7-8) (Cardenas's Undisputed Fact #6, #15). Cardenas then interviewed several witnesses, including the Carrillo Defendants, and met with other officers to confer on what had occurred. (*Id.* at p. 7-8) (Cardenas's Undisputed Facts #7-10). These witnesses reported that Morales was the initial aggressor. *See* (ECF No. 112-1, p. 10) (Cardenas

Affidavit) ("[E.] Carrillo reported feeling vulnerable to an assault as he sat in his car and ultimately got out of his vehicle as well.  As soon as he did so, he reported that he was assaulted by Mr. Morales."); (*Id.* at p. 43) (Civilian Statement of Joshua Pena ("Pena")); (*Id.* at 45) (Civilian Statement of Joseph Darden) ("As soon as we separated them, the person in the choke hold with the blood on his face continued to be aggressive and kept going on the younger individual.  The guy with the blood on his face kept attacking them . . . .").  It was only after this investigation that Cardenas interviewed Morales, confronted Morales on perceived inconsistencies between the witnesses' statements and Morales's statements, observed his "glossy, red eyes" and "the faint odor of alcohol," and finally arrested him for assault and suspicion of DWI.  (*Id.* at p. 11-12) (Cardenas Affidavit); (ECF no. 119-1, p. 33) (Morales Affidavit).  Therefore, the Court finds that there is no evidence in the record that Cardenas, immediately after speaking with the Carrillo Defendants, announced his decision to arrest Morales for a motor vehicle collision that did not occur.

Further, Plaintiffs have provided no evidence that Cardenas "called out to Officer Guereca that he could throw away the piece of paper he was taking notes on because [Cardenas] did not need any of the information since the decision had already been made to arrest Mr. Morales."  (ECF No. 11, p. 6).  Instead, Plaintiffs generally cite to Cardoza's Affidavit to "describe[] Officer Guereca's humiliating demotion."  (ECF No. 119, p. 7).  Therein, Cardoza states, in relevant part, that "[a]t the end of [Cardenas's and Guereca's] conversation, Officer Guereca tore out the top few pages where he had been writing in the small notebook, and crumpled them in his hand.  [Cardoza] did not see what he did with them."  (ECF No. 119-1, p. 26-27).  Notably, Cardoza does not state, nor does Plaintiffs' counsel argue in their Response, 1) that Cardenas instructed Guereca to tear out and crumple the top few pages, 2) that the top few

pages contained the investigative notes Guereca had previously taken, or 3) that the relevant top few pages were destroyed or otherwise were the subject of tampering.  In fact, Cardoza is explicit that she could not hear anything that Cardenas said to Guereca, and she did not see what Guereca did with the torn-out pages.  *See* (*Id.*).  Further, Cardenas contends that Guereca's notes in their entirety were produced as part of the investigation.  (ECF No. 112, p. 10) (citing (ECF No. 112-1, p. 173-78)); (ECF No. 120, p. 6) (citing (ECF No. 112-1, p. 164-68)).  Therefore, the Court finds that there is no evidence in the record that Cardenas instructed Guereca to destroy any of his investigative notes relevant to the altercation, nor did Plaintiffs argue that any such evidence is present in the record.

Finally, Plaintiffs have provided no evidence that Cardenas, after speaking with bystanders, returned to speak and laugh with the Carrillo Defendants.  Instead, Plaintiffs only allege an interaction between Cardenas and the Carrillo Defendants prior to Morales's arrest.  *See* (ECF No. 119, p. 17); *see also* (ECF No. 119-1, p. 33) (Morales Affidavit).  Therefore, the Court finds that there is no evidence in the record that Cardenas returned to speak and laugh with the Carrillo Defendants after interviewing bystanders or arresting Morales.

In sum, the Court finds that Plaintiffs have not supported the claims in their Amended Complaint with competent summary judgment evidence, and further, that the evidentiary record here is distinguishable from the factual allegations that had been before the District Court when considering Cardenas's Motion to Dismiss.

## C.    Conclusion

In sum, the Court finds that Plaintiffs have failed to support the claims in their Amended Complaint with competent summary judgment evidence.  Therefore, the Court finds that Plaintiffs' assertion that Cardenas's actions were "*Ramirez v. Escajeda* plus" to be unfounded,

and that the evidentiary record at summary judgment is distinguishable from the factual allegations before the District Court when deciding Cardenas's Motion to Dismiss.

Further, the Court finds that Plaintiffs have made no further argument as to how a civil conspiracy can be inferred from the instant factual record. *See* (ECF No. 119, p. 16-19).

"[P]laintiffs . . . may and often must rely on circumstantial evidence and reasonable inferences therefrom since conspiracies are rarely evidenced by explicit agreements." *Way v. Mueller Brass Co.*, 840 F.2d 303, 308 (5th Cir. 1988) (internal quotes omitted). However, "bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987). A plaintiff's evidence, "when 'placed in a context must raise a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.'" *Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)) (internal alterations omitted). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003).

The central operative fact here is that Cardenas "greeted [the Carrillo Defendants] with smiles, hugs, handshakes and laughter, like best friends meeting at a class reunion." *See* (ECF No. 119-1, p. 20) (Jaquez Affidavit). However, friendly behavior alone is not sufficient to support a conspiracy claim. When considering Cardenas's Motion to Dismiss, the District Court considered the fact of initial friendly behavior coupled with the alleged facts 1) that Cardenas immediately decided to arrest Morales for a nonexistent motor vehicle collision, 2) that Cardenas instructed another officer to discard investigative notes, and 3) that Cardenas returned to speak and laugh with the Carrillo Defendants. (ECF No. 83, p. 32). As discussed above, these additional facts are not present in the instant record. Instead, Plaintiffs allege misconduct by

Cardenas through 1) the order in which Cardenas chose to interview the parties and witnesses, 2) Cardenas's accusatory and hostile tones while interviewing and interacting with the Plaintiffs, and 3) arresting Cardoza for unpaid warrants and not allowing her to change out of her bathing suit before being taken into custody. *See* (ECF No. 119, p. 17-19). While potentially abrasive to Plaintiffs, these facts alone do not suggest any practice far exceeding a standard police investigation, and therefore, can reasonably be "merely parallel conduct that could just as well be independent action" rather than evidence of a constitutional violation. *Jabary*, 547 F. App'x at 610; *see also Ganesan v. James*, 115 F. App'x 670, 672 (5th Cir. 2004) ("[M]ere allegations of verbal abuse do not present an actional § 1983 claim."); *Rhodes v. City of Homer*, CA No. 09-1115, 2010 WL 3613735, at *5 (W.D. La. Sep. 14, 2010) ("[T]he Fifth Circuit has held that mere allegations of yelling, shouting, verbal abuse or threats by a police officer do not amount to a constitutional violation.") (internal quotes omitted). Without more than Plaintiffs' recitation of facts and the conclusory argument that "[t]he totality of Plaintiffs' summary judgment evidence raises a genuine issue of material fact about whether [Cardenas] unmistakably set out to cause the arrest, incarceration, and trial of a man he either knew or should have known to be innocent" (ECF No. 119, p. 20-21), the Court finds that any inference from the instant facts that Cardenas acted with malicious intent to arrest an innocent person would be unsupported speculation, and accordingly, is not sufficient to defeat a motion for summary judgment. *See Brown*, 337 F.3d at 541.

Further, the Court finds no merit in Plaintiffs' assertion that "[b]y managing the medical care of Mr. Morales so adroitly, Sgt. Cardenas not only got a confession, but also avoided thorough medical scrutiny of Mr. Morales'[s] deplorable condition." (ECF No. 119, p. 18). While Cardenas "shooed away" the EMS personnel, Morales was taken to Las Palmas, a medical

facility three minutes away.  (ECF No. 119-1, p. 34).  While at Las Palmas, Morales received blood work, "a CT scan was taken, which revealed that [Morales] had a fractured right eye socket," and four stiches in his left chin.  (*Id.*) (Morales Affidavit).  Therefore, the Court fails to find that the care Morales arguably would have received from the EMS at the scene would have been materially different from the care Morales received at Las Palmas, either by timing or quality of care.

In sum, the Court finds that Plaintiffs have failed to assert operative facts from which reasonable inferences can be drawn from to support a conspiracy claim, and instead have provided only bald allegations that a conspiracy existed.  *See Lynch*, 810 F.2d at 1369-70. Further, the Court finds that the facts and claims in Plaintiffs' cited authority and the factual allegations at issue in Cardenas's Motion to Dismiss are both distinguishable from the instant evidentiary record.  Accordingly, the Court recommends that Cardenas's Motion be granted.

### 3. Qualified Immunity

Cardenas also argues that he is "entitled to summary judgment based upon qualified immunity."  (ECF No. 112, p. 18).

Qualified immunity protects "state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Jackson v. City of Hearne, et al.*, 959 F.3d 194, 200 (5th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  "[L]ower courts have discretion to decide which of the two prongs of [the qualified immunity] analysis to tackle first." *Id.* at 200 (quoting *Ashcroft*, 563 U.S. at 735).  Further, courts may "resolve the case on a single prong." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020).

Here, Plaintiffs argue that "[t]he record in this case is replete with evidence of Sgt. Cardenas'[s] malicious intent."  (ECF No. 119, p. 20).  However, as discussed above, the Court has failed to find how the evidentiary record shows that Cardenas has violated any of Morales's constitutional rights.  Therefore, the Court finds that Plaintiffs have not met their burden to overcome Cardenas's qualified immunity defense.  *See Rhodes v. Prince*, 360 Fed. App'x 555, 558 (5th Cir. 2010) ("If we determine that no constitutional violation occurred, our [qualified immunity] inquiry ends.").  Accordingly, the Court recommends that Cardenas's Motion for Summary Judgment be granted based on qualified immunity.

c.      **Plaintiffs' Supplemental Response**

In Plaintiffs' Supplemental Response, Plaintiffs "beg the Court's attention to the Supreme Court's recent decision in *Thompson v. Clark*, [142 S. Ct. 1332 (2022)]."  (ECF No. 134, p. 1). Specifically, Plaintiffs argue that "*Thompson* . . . strongly suggests that Plaintiffs' burden does not include the 'shocking' requirement." (*Id.* at p. 4).  In response, the Carrillo Defendants argue that "Plaintiffs' . . . argument is misleading" since "*Thompson* involves a claim of malicious prosecution, and not imposition of false charges" and that the "Supreme Court never addressed the removal of the substantive due process requirement of 'shocking' governmental action anywhere in the decision."  (ECF No. 135, p. 1-2).

The Supreme Court in *Thompson* addressed a narrow issue regarding the favorable termination standard, and whether a plaintiff must "show that his criminal prosecution ended without a conviction" or whether a plaintiff must "demonstrate that the prosecution ended with some affirmative indication of his innocence."  *Thompson*, 142 S. Ct. at 1335.  Specifically, the Supreme Court held that "[t]o demonstrate a favorable termination of a criminal prosecution for

purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Id.*

Here, the Court finds that the Supreme Court's holding and relevant findings in *Thompson* are not relevant to the instant case, since there is no issue regarding the favorable termination of charges that were brought against Morales.  It is undisputed that Morales was acquitted by a jury of the assault charge and that the felony DWI case was dismissed since the evidence was insufficient.  *See* (ECF No. 119-1, p. 148, 153).  Furthermore, Plaintiffs assert in their Supplemental Response that "*Thompson*'s core holding . . . has no bearing on this case." (ECF No. 134, p. 3).

Instead, Plaintiffs main contention is that "*Thompson* . . . strongly suggests that Plaintiffs' burden does not include the 'shocking' requirement."  (*Id.* at p. 4).  Plaintiffs argue that "the Supreme Court has taken the Civil Rights Act of 1871 back to its historical roots" and "[n]ow . . . equates 'wrongful initiation of charges' with the Nineteenth Century tort of malicious prosecution . . . which removed the substantive due process requirement of 'shocking' governmental action."  (*Id.*).

Here, unlike the claim in *Thompson*, Plaintiffs' Amended Complaint does not assert a claim of malicious prosecution against any Defendant.  *Compare* (ECF No. 11), *with Thompson*, 142 S. Ct. at 1335.  As discussed above, the Court notes that Plaintiffs do not state what alleged constitutional violation is the basis of the conspiracy in which Defendant Cardenas and E. Carrillo were involved.  *See* (ECF No. 119, p. 16-21).  Plaintiffs' Amended Complaint instead asserts that "[t]ogether, the Carrillos and Sgt. Cardenas knowingly imposed false charges, supported by perjurious testimony, against Mr. Morales in order to protect the guilty parties, the Carrillos."  (ECF No. 11, p. 10).  Further, when considering the motions to dismiss, the District

33

Court "determine[d] that Plaintiffs' [underlying constitutional violation] allegations [against E. Carrillo met] the standards for a *false-arrest claim* under the Fourteenth Amendment." (ECF No. 83, p. 28) (emphasis added). As Plaintiffs correctly note at the beginning of their Response, the District Court "issued a 58-page opinion which controls the issues presented from then to now." (ECF No. 119, p. 1). Therefore, the Court finds that the Supreme Court's decision in *Thompson* regarding Fourth Amendment claims of malicious prosecution is not applicable to the claims of the imposition of false charges in the instant case, which were construed by the District Court as Fourteenth Amendment false-arrest claims.

Assuming, *arguendo*, that the *Thompson* decision applies to false arrest claims, the Court finds that any distinction between the standards of "shocks the conscious" and "wrongful initiation of charges" is irrelevant. As discussed above, the Court finds that probable cause existed for Cardenas to arrest Morales. Since probable cause existed, Cardenas's actions do not rise to the "wrongful initiation of charges." *See Thompson*, 142 S. Ct. at 1337-38 ("[T]he gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges *without probable cause*.") (emphasis added).

In sum, the Court finds that the Supreme Court's decision in *Thompson* is not applicable to any of the issues of the instant case discussed above, and therefore, finds that Plaintiffs' Supplemental Response does not raise any issues that are relevant to this Court's recommendations.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that there is a genuine dispute of material fact as to who was the initial aggressor during the altercation in the Walmart parking lot. Further, the Court finds that a reasonable jury could find that the Carrillo Defendants were the initial

aggressors, and therefore, E. Carrillo's statements to the police were false in order to have Morales arrested and convicted of assault. Finally, the Court finds that Cardenas had probable cause to arrest Morales, and therefore, is not liable for a civil conspiracy regarding Morales's arrest and prosecution.

Accordingly, the Court **RECOMMENDS** that "Defendants Sergeant Enrique Carrillo's and Aaron Carrillo's Joint Motion for Summary Judgment" (ECF No. 113) be **DENIED** and that "Defendant Sergeant Ruben Cardenas' Rule 56 Motion for Summary Judgment" (ECF No. 112) be **GRANTED**.

**SIGNED** and **ENTERED** this 29th day of April, 2022.

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**